J. L. WALLER, *Plaintiff in Error,* vs. FIRST SAVINGS & TRUST COMPANY, of Tampa, a corporation, as administrator of the estate of John Hodasz, deceased, *Defendant in Error.*

138 So. 780.

En Banc.

Opinion filed December 23, 1931.

Petition for rehearing denied January 27, 1932.

*Whitaker Brothers*, of Tampa, for Plaintiff in Error;

*Edwin R. Dickenson*, of Tampa, for Defendant in Error.

DAVIS, J.—The facts upon which this suit is based, as disclosed by the allegations of the declaration, are most unusual, and, so far as we know, unprecedented in this state.

The declaration alleges that on April 24, 1930, the plaintiff and his wife were residing in a dwelling in Hillsborough County, owned by the plaintiff, and that on said date one John Hodasz, for whose estate the defendant had been appointed administrator, intentionally injured and damaged said dwelling house by placing a bomb, or other high explosive, underneath or near to said residence, and had wilfully and intentionally caused the same to be exploded, with the intention of injuring and damaging the plaintiff, and that such explosion did damage the plaintiff's dwelling house to the amount of $3000.00.

The declaration further alleges that, in addition to injuring said dwelling house, the said Hodasz caused plaintiff to suffer other pecuniary damage and loss, in that the explosion inflicted very serious injuries upon the plaintiff's wife, necessitating the amputation of her left leg between the ankle and the knee, seriously injuring her right leg and causing the loss of sight in one eye, and injuring her right arm and hand so that she cannot use them, and so maiming her that she will be practically an invalid the

balance of her life, rendering it impossible for her to per-
form the duties of a wife, and thereby depriving plaintiff
of her companionship and services and making it neces-
sary that he have some one with her at all times to wait
upon her. That plaintiff was forced to expend $800.00 for
hospital bills for the treatment of his wife, and that he
will be required to expend other large sums for her care
and treatment in the future. The declaration further al-
leges that after the commission of said wrongful act, the
said John Hodasz died and that the First Savings and
Trust Company, of Tampa, a corporation, was duly ap-
pointed administrator of his estate and duly qualified and
is now acting as such administrator. The action was brought
against said corporation as Administrator of the estate of
John Hodasz, and claimed damages in the sum of $50,-
000.00.

The defendant corporation, as administrator aforesaid,
demurred to the declaration upon the grounds that plain-
tiff's cause of action abated with the death of the defend-
ant's intestate, and did not survive against the administra-
tor, and could not be revived against such administrator.

The court sustained the demurrer to the declaration, ac-
companying the order with an able opinion in support of
the court's conclusion. The plaintiff declining to plead
further, final judgment was rendered in favor of the de-
fendant, to which judgment writ of error was sued out by
the plaintiff, who assigned as error the order of the court
sustaining the demurrer to plaintiff's declaration, and the
rendition of the final judgment in favor of the defendant.

It was the opinion of the Circuit Judge who sustained
the demurrer to the declaration, that the decision on the
demurrer turned upon the construction of section 4211, C.
G. L. 2571 R. G. S. which reads as follows:

"4211. (2471.) SUITS FOR PERSONAL INJURIES.
—All actions for personal injuries shall die with the
person, to-wit: Assault and battery, slander, false im-

prisonment, and malicious prosecution; all other actions shall and be maintained in the name of the representatives of the deceased.''

On the authority of Jacksonville Street Railway Co. vs. Chappell, 22 Fla. 616, 1 Sou. Rep. 10, and Baker vs. Crandall, 47 Am. Rep. 126, it was held by the Circuit Judge that this action, embracing in one count of the declaration a claim for injuries to plaintiff's real property and a claim for personal injuries to plaintiff's wife, could not be maintained against the administrator of the estate of the deceased tort feasor, who had died prior to the institution of the suit, because an action, sounding in tort, could not have been instituted against the estate of a deceased tort feasor at common law, and the statute (Section 4211 C. G. L. supra) had not changed the common law.

In only three cases has the construction and effect of our statute been before this court prior to the institution of this suit. Jacksonville Street Railway Co. vs. Chappell, 22 Fla. 616, 1 Sou. Rep. 10; Jones vs. Townsend, 23 Fla. 255, 2 Sou. Rep. 612 and Close vs. Cunningham, 99 Fla. 1109, 128 Sou. Rep. 429. It has been considered and construed by the Circuit Court of Appeals for this Circuit in the case of Brill vs. Jewett, 262 Fed. 935, where a liberal construction of it was followed.

Two of the cases just cited (Jacksonville Street Railway vs. Chappell, supra; and Jones vs. Townsend, supra) involved the application of the statute only as it applied to the survival of the right of action in cases of tort to the injured party, and not the survival of the right of action against a deceased tort feasor's estate. The third, Close v. Cunningham, 99 Fla. 1109, 128 Sou. Rep. 429, involved a deceased tort feasor.

The holding in the Chappell case, supra, was that our statute, Section 4211 C. G. L., did not change the common law rule as to actions for personal injuries, and that the action in that case, which was in tort to recover damages

resulting from personal injuries received by a passenger through the negligence of a common carrier, abated on the death of the *plaintiff*.

In Jones v. Townsend, *supra,* it was again held that under the common law and our statute, the right of action for libel died with the *plaintiff*.

In the more recent case, Close v. Cunningham, 99 Fla. 1109, 128 Sou. Rep. 429, which was decided on May 15, 1930, little over a year ago, there was involved for the *first* time the question whether or not in an action for personal injuries caused by the negligent operation of a motor truck, where the tort feasor died, the cause of action died with the person of the *defendant* and could not be revived against the personal representative of the deceased defendant. In a PER CURIAM opinion, the holding of the lower court in that case to the effect that the cause of action did die as against the defendant, as well as the plaintiff, was affirmed by a four to two decision of this Court,—Justices Terrell and Buford dissenting. This affirmance appears to have been on the supposition and assumption that, under the common law of Florida, the same rule must necessarily prevail with reference to the survival of actions against defendants as prevails with reference to the survival of the cause of action in favor of plaintiffs.

It is argued by defendant in error that Close v. Cunningham, *supra,* is in point and controlling as to the decision to be made here, and that under the rule of *stare decisis* we should affirm the judgment of the court below on the authority of that case, notwithstanding the obvious fact that the principles of natural justice would seem to support an action of this kind, and require the administrator to be held liable to answer out of the deceased tort feasor's estate for the wrongful acts committed by him in his lifetime, to the injury and damage of another, regardless of whether the estate of the wrongdoer had thereby been increased or not.

We agree with the argument that as a *general* proposition courts are not warranted in founding their decisions upon their individual ideas of natural justice, when to do so runs counter to established prior decisions interpreting the law as applied to a like state of facts previously considered, and we may concede the point also that the function of the court in the present case must be to now interpret and apply the law as it exists, leaving it to the legislature to make such statutory changes or amendments as new conditions or a more enlightened understanding of right and justice may require.

But it does not necessarily follow that when this court has before it a case on writ of error from a judgment, the affirmance of which will crystallize into a precedent for the future an unrighteous rule of decision which is shocking to every conception of justice and fairness, that this court is thereby precluded from re-examining the law which may be applicable to this case, even to the extent of re-examining the correctness of the conclusions announced in previous cases, for the purpose of determining whether or not the rule previously announced is sound, or if sound as a general principle, whether its application to a case like the one before the court is not subject to modification in the light of demonstrably unequitable consequences which have never before been considered or taken into account.

The doctrine of the Chappell case in 22 Florida, *supra,* was seriously questioned and almost overruled in the very recent case of Close v. Cunningham, decided in 1930 (99 Fla. 1109, 128 Sou. Rep. 429), and that case was only decided by a bare majority of one Justice of this Court on the theory that the Chappell case was in point and consequently controlling on the question of survivorship of actions against the administrators of the estate of deceased tort feasors.

The most eminent text writers on the subject of TORTS,

as pointed out by Mr. Pollock, 11 Ed. page 61, have declared the rule against survival of actions against deceased tort feasors to be "one of the least rational parts" of the old English common law, and have expressed the opinion that when once the ancient common law notion of *vengeance for the wrong done* has been put aside and the idea of compensation substituted, the rule "actio personalis moritur cum persona" would be without plausible ground and in consequence would be rejected.

So, laying aside for the present, the doctrine of STARE DECISIS, it remains to be considered (1) whether the rule of death of the cause of action with death of the tort feasor ever became a part of the common law of Florida, and (2) if it did, whether or not we shall modify or overrule Close v. Cunningham on the ground that a proper construction of our statute on survival (Section 4211 C. G. L. *supra*) requires a different rule to be declared than was followed in that case.

There has always been at times a great diversity of opinion among both law writers and judges as to what the common law rule is in a particular case. Questions frequently arise as to how far common law rules admitted to have once existed have been modified by the intendments of statutes and constitutional provisions which are peculiar to the American system.

We may accept as true in this case the statement that under the common law of ENGLAND, taking into consideration the English royalist theory that men were subjects and not citizens, that tort actions were for vengeance and not for redress of wrongs by allowing compensation for them, and that the rule there was accordingly to the effect that no cause of action survived against the estate of a deceased tort feasor, any more than a criminal prosecution survives against the criminal.

But to concede this point, does not mean that such rule, of the common law as to rights of action against *defend-*

*ants,* as distinguished from rights of action in favor of *plaintiffs,* ever became a part of the common law of FLOR-IDA. Such rule may have been a part of the common law of England under monarchial government where the individual as such had no constitutional rights inherent in him as a citizen. There may have been no essential obstacle in the intendments of our system of laws to prevent the rule as to *plaintiffs* becoming a part of our common law. Yet there does appear to be an intendment found in our organic law, customs, institutions and system of government which makes inapplicable to our system of common law the rule that as to *defendants,* tort. actions die with the wrongdoer.

One of the provisions of our system of constitutional law which by intendment, if nothing else, conflicts with a recognition of the rule that a right of action in tort dies with the tort feasor, is found in our Bill of Rights, which, in Section 4 thereof, provides:

"All courts in this state shall be open, so that *every* person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law. . . . "

Section 87 C. G. L., 71 R. G. S., which declares the common law of England to be in force in Florida in the absence of contrary statutes, expressly excepts from such common law adoption *any rule* of the old English common law which is *inconsistent* with the constitution and laws of Florida.

So if it be fully established that the rule of the old *English* common law was to the effect that a cause of action in tort died with the tort feasor, but such rule is found to be contrary to the intendments, effects, purpose and object. of Section 4 of our Bill of Rights, then such rule of the old English common law did not become a part of the common law of Florida.

This court has expressly recognized the principle that in specific instances certain rules which were admittedly

a part of the old English common law, did not become a part of the FLORIDA common law, because contrary to our customs, institutions or intendments of our statutes on other subjects.

For example, under the old ENGLISH common law cattle were not allowed to roam at large and if they did so and inflicted damage by trespassing upon a neighbor's property, the owner of such cattle was undeniably liable at ENGLISH common law for the trespasses committed by his cattle when allowed to run at large. But in the early case of S. F. & W. RAILWAY COMPANY V. GEIGER, 21 Fla. 669, decided in 1886, this court had no hesitancy in declaring that the rule of the ENGLISH common law relative to liability for cattle trespasses was not suited to the institutions and customs of Florida people, *and therefore did not become a part of the common law of FLORIDA.*

The conclusion in that case was reached by the court solely on the ground that "the policy of our laws as to livestock" which encouraged the running at large of cattle, made the ENGLISH common law rule ill adapted to be followed here, and therefore it was held that such rule of ENGLISH common law would be rejected, and a rule of FLORIDA common law substituted in its place which was more in harmony with the policy of our institutions.

In the Geiger case, *supra, MR. JUSTICE RANEY* of this Court justified the Court's holding rejecting the ENGLISH rule of common law and substituting the FLORIDA rule, by saying:

"a different policy than that which has prevailed would have proven ruinous . . . ." (text 685).

A late as December 4, 1925, this Court has declared in harmony with the foregoing case that while the principles of the English common law are in force in Florida, when not in conflict with our organic or statutory law, that such rules of the common law are designed for application to

new conditions and circumstances, as they may be developed by enlightened commercial and business intercourse; that such common law rules are within the scope and remedial intent of existing provisions and principles of law, and that such common law principles are intended to be vitalized by practical utility, subject to organic limitations. See State ex rel. Railroad Commrs. v. Jacksonville Ter. Co., 106 Sou. Rep. 576, 90 Fla. 721.

In another case more recent, this court refused to recognize the strict limitations which once surrounded the issuance of common law writs of certiorari. In that case the court held that although certiorari as issued by the Supreme Court of this State is a common law writ and controlled by common law principles, that nevertheless the rules of common law relating to that writ would be relaxed in the interest of the administration of justice, although many old ENGLISH common law precedents were cited as militating against any such departure. See Florida Motor Lines v. Railroad Commrs., 100 Fla. 538, 129 Sou. Rep. 876.

In the case at bar we have the following situation: John Hodasz, the tort feasor, is dead. How and when he died is immaterial. The fact remains that he died before suit was brought against him in this cause.

Hodasz left what is apparently a comfortable estate and the defendant in error was appointed as administrator of this estate. It is the administrator who is urging the defense here that because Hodasz died after he is alleged to have committed the criminal tort of dyamiting a dwelling house and crippling a housewife domiciled therein, that any right of action for compensation to plaintiff which existed against Hodasz before his death nevertheless died when Hodasz died.

On this point the lower court, feeling that it was bound by prior decisions of this Court, sustained a demurrer to the declaration and dismissed the suit. So the question

here is whether or not we shall decide that under the common law of Florida the cause of action which accrued against Hodasz in his lifetime can be enforced after his death by a damage suit against his estate represented by his administrator notwithstanding the holdings of the previous cases referred to, or whether we shall modify or overrule such cases in whole or in part.

To affirm such a judgment as has been rendered in this case is to ignore the plain provision of our constitutional Bill of Rights that the courts shall *always* be open so that a person injured in his person or property shall have a ''remedy'' against his wrongdoer. Does this ''remedy'' not mean redress or recompense, and if so, do we not then have a situation under the laws of Florida which as POLLOCK in his work on TORTS points out, did not exist at the ENGLISH common law?

The AMERICAN theory of constitutional protection to life, liberty and property and the theory of Florida law as expressed in our State constitution is clearly to the effect that actions for recovery of damages for torts are no longer to be regarded as mere *punitive* retaliations against the tort feasor, but as a means of *recompense* to the citizen wronged.

The *reason* for the English law rule to the contrary was that a tort action died with the tort feasor because a tort action was regarded as punitive in character, all of which has been changed in Florida by the intendment of our Bill of Rights which recognizes not only the punitive nature of a tortious wrong done, but also recognizes and preserves in organic language a legal ''remedy'' for that wrong, and provides that the courts shall always be open to afford it. Nor is there anything in our previous holdings dealing with cases of alleged survivorship in tort actions which refutes the idea just advanced.

The case of Close v. Cunningham assumed, but did not determine, that the English common law rule referred to

prevailed in Florida. In that case the construction of our *statute* of survival was the sole question involved and it is not indispensably necessary that we now affirmatively overrule that case in order to decide on a different premise, the point which has just been discussed.

· If the common law of Florida is not held to be different from the common law of England because of the constitutional intendments that we have pointed out, then any person criminally so inclined may by his own voluntary and wilful acts accomplish the financial destruction or physical extinction of another person by means such as are alleged to have been used by Hodasz in this case, and if the wrongdoer should be killed by a sheriff's posse, or lynched by an indignant mob, or die before a judgment could be obtained against him, the injured person would be wholly deprived of that "remedy" to seek recompense for the wrong done which the constitution of this State says shall be always secured to him.

To merely state the rule's permissible application, in the light of our recognized theory of a constitutional right to a remedy in the court for *any* injury done, seems to be sufficient to demonstrate that such rule has no place in our system of administering justice, even if it was a part of the *English* common law.

So, it appearing that the rule of the ENGLISH common law is not in harmony with our policies, institutions, customs or theory of constitutional rights, we should have no hesitancy in rejecting it in this case on the ground, if no other, as stated in the language of JUDGE RANEY, "that a different policy would be ruinous." When the reason for a rule has passed the rule itself should no longer stand, and a new rule in harmony with changed conditions should be recognized *se non e vero, e ben trovato*.

Furthermore, in Abraham v. Baldwin, 52 Fla. 151 (text 163), 42 Sou. Rep. 591, this Court expressly overruled two of its previous decisions which had originally followed an

applicable English common law rule, because, as was there said, the *basis* for the English rule did not exist under the laws of Florida, and therefore such English rule did not become a part of the common law of Florida.

That case involved the question whether or not a plea of justification in an action for slander for imputing a crime, required the party pleading it to prove his justification beyond a reasonable doubt, or by a preponderance of the evidence. Under the English rule, proof beyond a reasonable doubt was unquestionably required, but the court refused to follow the English rule, admitting that it was a part of the English common law on July 4th, 1776, but saying in support of its ruling rejecting it:

"The other objection is to the words, 'and in order for the defendant to justify or relieve herself therefrom it becomes necessary for such defendant to establish the truth of the words so uttered to the satisfaction of your minds by competent evidence to the exclusion of and beyond a reasonable doubt.'

This charge was doubtless given on the authority of Schultz v. Pacific Insurance Co., 14 Fla. 73, text 121, and Williams v. Dickenson, 28 Fla. 90, text 113, 9 South. Rep. 847, where it was held that a fact must be established by the same evidence, whether it is to be followed by a civil or a criminal consequence; and that the character of the fact to be proved, and not the position of the party determines the degree of proof to be required.

This rule is said to have been established in England because the plaintiff may there be tried for the crime imputed to him upon a verdict of justification without the intervention of a grand jury. No such result follows here, therefore the reason for the rule does not exist. See Cook v. Field, 3 Esq. 133; Wilmett v. Harmer, 8 Car. & P. (34 E. C. L. 589) 695; Ellis v. Buzzell, 60 Me. 209.

The decisions heretofore made by this court upon the point have not become the basis of property rights, nor do they constitute a distinct policy in the administration of justice, and as no harm can result in establishing a rule in accord with reason and the great weight

of authority, the rule as first announced in Schultz v. Pacific Insurance Co., *supra,* and reluctantly followed in Williams v. Dickenson, *supra,* is now disapproved.''

Torts, under the ancient common law, were regarded as *delicts* or wrongs against the individual who was allowed to seek vengeance against the wrongdoer by mulching him in damages.

Because a tort action was akin to a criminal proceeding, the death of the tort feasor defeated, just as the death of a criminal defeated, further prosecution for the wrongful act committed. In fact, tort actions were recognized long before criminal prosecutions became general.

The ancient Jewish law found in the Scriptures referred to a vast number of wrongs and injuries, many of which are now also most exclusively dealt with as crimes. The wrongs, or torts, were redressed by personal retaliation. Even murder was thus dealt with, but the guilty party was given certain rights of asylum in special territories since known as ''Cities of Refuge''. Later a money compensation seems to have been allowed to serve the purpose of this personal retaliation, and thus was first recognized the recovery of damages for torts. Lee's History of Jurisprudence, 116-118.

The penal law of other ancient communities was not the law of crimes but was the law of wrongs, or, to use the English technical word for it, the law of ''Torts''. The person injured proceeded in retaliation against the wrongdoer by seeking the recovery of damages against him for the wrong done.

At the head of the civil wrongs recognized by the Roman Law stood *furtum* or theft. Other offenses which we now regard exclusively as crimes were there treated as ''torts'' to be avenged by the recovery of damages as a retaliation or in other words as *satisfaction,*—not recompense. Money compensation for homicide and for assaults and violent robbery were provided for.

The criterion of a delict, or tort, under the ancient law was that it was the person injured, and not the state, which suffered the wrong. So in the infancy of our jurisprudence, the individual subject injured by a tort depended for protection against violence or fraud, not on the law of crime, but on the law of TORT. See Sir Henry Maine's "Ancient Law", 358.

The concept of vengeance and not recompense therefore became so interwoven into the English common law of torts that it was not to be unexpected that the English common law would regard the tort as having died with a defendant tort feasor just as a crime now dies with the defendant criminal.

But this concept is opposed to our American theory of jurisprudence where *recompense* to the injured for a tort, and not mere vengeance for the wrong is the object of the right to sue. Our Bill of Rights seems to recognize this theory in terms, for it preserves to the injured one his "remedy", not his vengeance for wrongs done him in person or property. Certainly this statement in the Bill of Rights means something more than a mere empty platitude placed there as a simple anachronism.

Well may this Court say that since our theory of constitutional law is that we recognize these redressable wrongs and provide in our constitution that a "remedy" for them shall be secured inviolate against the wrongdoer as recompense to the wronged, that that part of the common law rule "actio personalis moritur cum persona" which made the action for personal injuries in tort die with the tort feasor never *became a part of the Common Law of Florida at all!*

In Close v. Cunningham, supra, as we have said the point passed on was whether or not *taking it for granted that under the common law of Florida as well as the English common law* the action against a tort feasor died with such

tort feasor, our statute, Section 4211, C. G. L., *supra* changed the rule of the common law on this subject.

In this connection it is pertinent to point out that in the decision of Close v. Cunningham, MR. JUSTICE TERRELL, in a most able and convincing dissenting opinion which was concurred in by MR. JUSTICE (NOW CHIEF JUSTICE) BUFORD, refused to acknowledge that even the decision on the statutory point involved in that case was sound.

The majority opinion seemed to presume as a matter of course that the case was necessarily controlled by Jacksonville etc. Ry. Co. v. Chappell, *supra,* and Townsend v. Jones, *supra,* and on that basis affirmed the judgment holding that the action in tort had died with the wrongdoer. But, said MR. JUSTICE TERRELL:

"I think the purpose of the statute here brought in question was to enlarge the rule of the common law for the survival of actions for personal injuries. For the purpose of merely re-enacting that rule it was unnecessary. * * * This holding is not only supported by the better reasoning, but is in harmony with the trend of survival statutes in this country."

Another Justice (MR. JUSTICE BROWN) indicated a similar leaning in viewpoint when he placed his concurrence with the majority opinion largely on the ground that the construction of the statute had been "allowed to stand so long" that he thought it ought still be allowed to stand until changed by the Legislature, not by the Courts.

But it seems plain that this Court has never before been called on to consider and never has ruled on whether or not the constitutional intendment of our Bill of Rights has modified the common law rule with reference to survival of rights of action against the estates of deceased tort feasors.

Now that such question is presented, this Court, when called on to administer justice, should not hesitate to ap-

ply the rule of reason with the same courageous declaration that caused this court to re-write, in the public interest, a new rule of common law with reference to trespassing cattle, because the ancient English rule would have proved a "ruinous" policy.

What can be more *ruinous* than to lay down a precept by which the estates of wealthy criminals who blow up people's houses shall be held exempt from making restitution for the wrong in the form of money damages to the injured, merely because an avenging justice may have brought about the death of the malefactor before a civil judgment could be obtained against him while he was living? What can be more ruinous and more unjust than to say to the surviving children of a deceased malefactor that they shall inherit their father's estate undiminished by any restitution out of it for the benefit of other children of the malefactor's victim who has been bombed or "put on the spot" by a deceased tort feasor?

We do not have to overrule any previously adjudged case to reach the conclusion that a cause of action in tort does not under the Florida system of common law die with the tort feasor. There is nothing essentially inconsistent in recognizing the survival of a right of action *against* a deceased tort feasor while refusing to recognize a survival in favor of the personal representative of the injured one, if that be necessary to do justice and not violate the rule of *stare decisis*.

Our Bill of Rights refers to a "remedy". What is this remedy"? Is it not the "remedy" the common law gave an injured one for wrongful injury? And is not this common law "remedy" under our Bill of Rights *preserved* so long the courts shall be "open" to the plaintiff? Does not the constitution mean that the courts are "open" to the plaintiff so long as he, the plaintiff lives?

If the language of Section 4211, C. G. L., which says all actions for personal injuries shall die with the person,

means no more than what we would decide if that statute did not exist, that is to say, if the statute is merely declaratory of and means no more than what the common law meant, as was indicated in the Chappell case, *supra*, then we do not have to set aside the ''provisions'' of the statute in this case to reach the conclusion contended for here, and the criticism to the effect that we are exercising legislative power on the basis of Article IV of the Bill of Rights is not well taken.

The point is not that any *new* right is created by the Bill of Rights, but that the old ENGLISH common law rule which TERMINATED by death of the tort feasor, the acknowledged pre-existing right of action which had accrued against him, did not become a part of the common law of Florida, because of the INTENDMENTS not only of our Bill of Rights, but of the whole system of Florida law which recognizes the right of action for torts as remedial, not punitive.

There is ample warrant for this Court to continue to hold that such an action dies with the plaintiff, as at the ENGLISH common law, but that the action *against* the tort feasor does not die because of the modification of the ENGLISH common law which has been made by the laws of this State. Thus we can still follow the two old cases decided 22 and 23 Florida, without extending the rule there recognized to cases like the one at bar.

But if necessary to do so, we should unhesitatingly modify or expressly over-rule the holdings of our previous cases insofar as they may conflict with the rule here announced.

We acknowledge that the doctrine of *stare decisis* is absolutely sound. It is ordinarily a wise rule of action which should be faithfully adhered to by the Court in most cases to preserve the integrity of judicial administration of legal principles. But the doctrine of *stare decisis* is not a universal, inexorable command. The instances in which the

Supreme Court of the United States itself has departed from it to accomplish true justice, and uphold fundamental rights, are many. Examples of such departure will be found in the following long list of cases decided by that court: Lee v. Chesapeake & Ohio Ry. Co. (260 U. S. 653, 659), overruling Ex parte Wisner (203 U. S. 449); Terral v. Burke Construction Co. (257 U. S. 529, 553), overruling Doyle v. Continental Insurance Co. (94 U. S. 535), and Security Mutual Life Ins. Co. v. Prewitt, 202 U. S. 246); Boston Store v. American Graphophone Co., (246 U. S. 8, 25), and Motion Picture Co. v. Universale Film Co. (243 U. S. 502, 518) over-ruling Henry v. Dick Co. (224 U. S. 1); United States v. Nice (241 U. S. 591, 601), over-ruling Matter of Heff, 197 U. S. 488); Pollock v. Farmers' Loan & Trust Co. (158 U. S. 601), over-ruling Hylton v. United States (3 Dall. 171); Roberts v. Lewis (153 U. S. 367, 379), over-ruling Giles v. Little (104 U. S. 291); Brenham v. German American Bank (144 U. S. 173, 187), over-ruling Rogers v. Burlington (3 Wall. 654), and Mitchell v. Burlington (4 Wall. 270); Leisy v. Hardin (135 U. S. 100, 118), over-ruling Pierce v. New Hampshire (5 How. 504); Morgan v. United States (113 U. S. 476, 496), over-ruling Texas v. White (7 Wall. 700); Legal Tender Cases (21 Wall. 457, 533), over-ruling Hepburn v. Griswold (8 Wall. 603).

The rule has also been departed from by this Court in noteworthy instances in its history even with regard to property rights which are ordinarily the most sacredly protected by the rule of *stare decisis*. See Christopher v. Mungen, 61 Fla. 513, 55 Sou. Rep. 273, where the holding in Adams v. Sneed, 41 Fla. 151, 25 Sou. Rep. 893, was expressly over-ruled, although the over-ruled case had stood as a rule of property since 1899. Also see Western Union Telegraph Co. v. Wilson, 32 Fla. 527, 14 Sou. Rep. 1, 37 Am. St. Rep. 125, 22 L. R. A. 434, which over-ruled Western Union Telegraph Co. v. Hyer, 22 Fla. 637, 1 Am. St.

Rep. 222, with reference to the measure of damages recoverable for failure to correctly transmit and deliver cipher messages.

In State of Washington v. Dawson, 264 U. S. 219, 44 Sup. Ct. Rep. 302, 68 L. Ed. 646, MR. JUSTICE BRANDEIS made the following statement with regard to the propriety, upon the part of the Supreme Court of the United States of departing from its earlier doctrines if it has come to consider those doctrines as erroneous:

> "The doctrine of *stare decisis* should not deter us from over-ruling that case and those that follow it. The decisions are recent ones. They have not been acquiesced in. They have not created a rule of property around which vested interests have clustered. They affect matters solely of a transitory nature. On the other hand, they seriously affect the lives of men, women and children, and the general welfare. *Stare decisis* is ordinarily a wise rule of action. But it is not a universal, unexorable command. The instances in which the court has disregarded its admonition are many."

Again, in Garland v. Washington, 232 U. S. 642, 34 Sup. Ct. Rep. 456, 58 L. Ed. 772, the Supreme Court of the United States itself, based its judgment in that case upon the dissenting opinion which had been previously filed by MR. JUSTICE PECKHAM in Crain v. United States and said:

> "Holding this view, notwithstanding our reluctance to over-rule former decisions of this Court, we are now constrained to hold that the technical enforcement of formal rights in criminal procedure sustained in the Crain case is no longer required in the prosecution of offenses under present systems of law, and so far as that case is not in accord with the views herein expressed, it is necessarily over-ruled."

In an article published in the United States Daily, Vol. VL, No. 82, June 8, 1931, MR. CHIEF JUSTICE CLARENCE M. MARTIN, of the Supreme Court of Indiana, says:

> "The rule of *stare decisis* has served to maintain

reasonable certainty in the law, but it has also led to what Dean Smith, of the Columbia University School of Law, characterizes as 'an intellectual inbreeding which has tended to perpetuate ideas which have long since lost their social utility.' 'Legal concepts born of a passing order, are losing their utility,' he says, 'and devices for law making and law administration designed to function in a simple society are breaking down under the complexities of modern life. Seldom do the courts utilize the knowledge of the economist, the historian, the psychologist or the philosopher in determining social policy. The profession has developed no technique by which such knowledge is made available. As a result, legal standards are often inconsistent with actual experience.' *Stare decisis* has a strange hold on the lawyers and judges of America. The American Law Institute is engaged in the great work of restating the common law. It is doing a remarkable work. But it is a generalization from past cases purely. Many judges, such as Holmes and Cardozo, have long been fully and frankly aware that there are other factors besides legal precedents that effect decisions. *The science of the law cannot and ought not to be limited solely to the decisions of the past.*"

A majority of the Court have reached the conclusion that under the laws of Florida a right of action in tort for the recovery of purely compensatory damages for personal injuries caused by a tort feasor in his lifetime does not die with the tort feasor, but that such right of action, which has accrued against the tort feasor in his lifetime, survives after his death, and that an action at law based thereon may be brought or maintained by the injuried party against the personal representative of the estate of the deceased tort feasor, for the recovery of compensatory damages out of the tort feasor's estate for the personal wrong and injury done.

It is further held that if there is anything to the contrary to be implied from the previous holdings of this Court, such previous decisions to the extent that they con-

flict with the conclusions reached here, should be disapproved and modified to accord with the conclusions hereinbefore stated.

So holding, it follows that the judgment must be reversed and the cause remanded with directions to overrule the demurrer to the plaintiff's declaration and have such further proceedings as may be according to law.

Reversed and remanded with directions.

BUFORD, C.J., AND WHITFIELD AND TERRELL, J.J., concur.

WHITFIELD, J.—All the members of the Court are of the opinion that under the law of this State the plaintiff below may maintain an action against the administrator of the alleged tort feasor to recover damages for injuries to plaintiff's dwelling house caused by the tortious act of the administrator's decedent in his lifetime.

"A personal injury to a married woman caused by the tort of a third person gives rise to two causes of action; one for her personal pain and suffering, and the other for the husband's consequential loss of her society and services and for expense incurred for medical attention and nursing." 30 C. J. 961, 966.

At common law a husband had a right of action to recover damages for the impairment of his wife's capacity to render marital service to him caused by the tortious act of a third person; but such right of action abated at the death of the tort feasor, 1 C. J. 203. The organic law and statutory enactments of this State are inconsistent with the rule of the common law that such action does not survive the tort feasor, and because of such inconsistency, the common law rule is not in force. See Section 87 (71) C. G. L.

The effect of the statute, Section 4211 (2571) C. G. L. which is designed to modify the injustice of the common law, is to authorize the husband to maintain an action against the administrator of a tort feasor who in his life-

time by tortious personal injuries to the wife impaired her capacity to render marital services to her husband.

The tort charged here is not one of the four classes of personal injuries which under the statute "shall die with the person". The purpose of the statute being to change the common law the quoted words mean that actions for the enumerated personal injuries shall not survive the person injured. Here the alleged tort feasor has died but the injured person is alive as is her husband who loses her marital services because of personal injuries to her by the deceased tort feasor.

Section 4211 C. G. L. provides that actions for enumerated classes of personal injuries "shall die with the person", and that "all other actions shall and may be maintained in the name of the personal representatives of the deceased," which latter quoted phrase, considered with the preceding provision of the Section, means that all other actions for personal injuries than those stated in the statute, shall *survive* and may be maintained in the name of the representatives of the deceased. If an action, or a cause of action survives, it may be maintained by and against appropriate parties as may be provided by law. The intent of the laws of this State is, as expressed in an organic provision, that every person for any injury done him shall have remedy by due course of law. The injury to the plaintiff here is to his wife, to his home and to his property; and the law contemplates that for such injuries he shall have remedy in damages recoverable from the tort feasor's property, by due course of law, that right and justice may be done. Section 4, Declaration of Rights.

In Close v. Cunningham, 99 Fla. 1099, 128 So. 429, a decision that an action for personal injuries abated at the death of the defendant wrong-doer, was affirmed upon the theory that prior decisions of this court in the Chappell and Townsend cases had construed Section 4211 (2571) Compiled General Laws, first enacted in 1828, to

abate all actions for personal injuries at the death of either the person injured or the person who committed the injury, which was the common law rule stated in Jacksonville St. Ry. v. Chappell, 22 Fla. 616, 1 So. 10; 1 C. J. 195.

The statute, Section 4211 (2571) C. G. L. provides that "all actions for personal injuries shall die with the person, towit: assault and battery, slander, false imprisonment, and malicious prosecution; all other actions shall and may be maintained in the name of the representatives of the deceased." The first part of this Section means that actions for the enumerated classes of personal injuries, shall die with the person injured, not that such actions for personal injuries shall die with the tort feasor if the person injured be living. See Brill v. Jewett, 262 Fed. 935; Gregin v. Brooklyn C. R. Co., 75 N. Y. 192. The statute was doubtless designed to modify and not to restate the common law rule. A statute adopts as the common law of this State the common law of England, provided it "be not inconsistent with the constitution and laws." Section 87 (71) Compiled General Laws, originally enacted in 1829. See also Section 6, Article 16, Constitution of 1838, Section 5, Article XVI, Constitution of 1861; Section 6, Article XVI, Constitution of 1865. To abate an action for personal injuries because of the death of the tort feasor may fairly be regarded as inconsistent with the laws of this State, therefore, that rule of the common law is not in force in this State. See S. F. & W. Ry. v. Geiger, 21 Fla. 669; Hadley v. City of Tallahassee, 67 Fla. 436, 65 So. 545. An interpretation that the statute, Section 4211, C. G. L. abates the enumerated actions only upon the death of the injured person, accords with a provision of the Constitution of 1885 that "every person for any injury done him * * shall have remedy, by due course of law," etc. Section 4, Declaration of Rights. When the Chappell and Townsend cases were decided the Constitution of 1868

then in force did not contain the above quoted organic provision, though it was contained in the Constitutions of 1838, 1861 and 1865.

BUFORD, C.J., AND ELLIS, TERRELL AND DAVIS, J.J., concur.

BROWN, J., concurs in part and dissents in part.

BROWN, J. (Concurring in part and dissenting in part) :—While the principles of natural justice would seem to support an action of this kind, and require the administrator to be held liable to answer out of the decedent's estate for the wrongful acts committed by him in his lifetime, to the injury and damage of another, regardless of whether the estate of the wrong-doer had been thereby increased or not, courts are not generally warranted in grounding their decisions upon their ideas of natural justice, where such ideas are in conflict with established law. It is the prime function of the court to fairly and reasonably interpret the law as it exists, leaving it to the legislature to make such changes or amendments as new conditions or a more enlightened understanding of right and justice may require. Our duty therefore in this case is to determine whether the court below was correct in sustaining the defendant's demurrer to the plaintiff's declaration in this case under the law existing at that time, correctly and reasonably interpreted.

At common law, where a cause of action, sounding in tort, for injury to either the person or property of another, was such that it could be enforced only by an action *ex delicto* for damages, in which the plea of the general issue must be "not guilty," such cause of action did not, as a general rule, survive the death of the person to or by whom the wrong was done; so that such a cause of action, or a pending action thereon, abated on the death of either party. But by the early English statutes of 4 Edward III c. 7 and 31 Edward III, c. 11, which constitute a part of the common law of this State, this rule was so modified as to

give an action in favor of a personal representative for certain injuries to personal property. And later by statutes 3 and 4 William IV, c. 42, Sec. 3, the common-law rule was further modified by giving an action in favor of the personal representatives for injury to real estate, and against the personal representative for injury to real or personal property, but none of these statutes changed the common law rule as to injury to the person. Furthermore, it might be observed here, the English statute last referred to, 3 and 4 William IV, c. 42, Sec. 3, was adopted some fifty odd years subsequent to the year 1776, and hence did not become a part of the common-law of England adopted in this State by the act of November 6, A. D., 1829, now Sec. 87 Comp. Gen. Laws. This Florida Statute, originally adopted by the territorial legislature of Florida, and later by the State legislature, adopted the common and statute laws of England, of a general and not a local nature, down to the 4th day of July, 1776, insofar as they were not inconsistent with the constitution and laws of the United States and the statutes (and necessarily by implication, also the constitution) of this State.

It is not here necessary for us to discuss the status of the common-law with reference to the survival of actions or causes of actions, *ex contractu,* for it is plain that the declaration in the case at bar is founded, not upon a contract express or implied, but upon a tort, pure and simple, and is an action *ex delicto,* to which the plea of general issue would necessarily be a plea of "not guilty".

In support of the above propositions with reference to the common-law, see 1 C. J., 153, 134-185; 1 R. C. L. 29-35; Jacksonville Street Railway Company v. Chappell, 22 Fla. 616, 1 So. 10; Jones v. Townsend, 23 Fla. 355, 2 So. 612; Close v. Cunningham, 99 Fla. 1099, 128 So. 429; 5 Encyc. Pldg. and Prac. 805, 806; U. S. v. Daniel, 6 How. II, 12 Law Ed. 323; Wynn v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228; Sullivan v. Associated Bill Posters, 6 Fed.

(2nd) 1000, 42 A. L. R. 503; Fla. Com. Law Pldg. & Prac. Crandall, Sec. 10.

In the opinion in the last cited case, the following appears:

"Sir Frederick Pollock, in his Work on Torts, 11th ed. p. 61, discussing the effect produced on liability for a death of either the person wronged or the wrongdoer, declares it to be one of 'the least rational parts' of the law; and he also declares that 'when once the notion of vengeance has been put aside, and that of compensation substituted, the rule 'actio personalis moritur cum persona' seems to be without plausible ground. First, as to the liability, it is impossible to see why a wrongdoer's estate should ever be exempted from making satisfaction for his wrongs. It is better that the residuary legatees should be to some extent cut short than that the person wronged should be deprived of redress.' The same writer, on page 71, after stating the rule that the right of action survives against the executor in cases where the decedent has added to his own estate property or the value or proceeds of property belonging to another, states that the rule is 'limited to specific acquisitions' of their value. It does not include the recovery of damages, as such, for a wrong, though the wrong may have increased the wrongdoer's estate in the sense of being useful to him or saving him expense."

We think it is plain therefore, that at common-law as it existed in A. D. 1776, the cause of action stated in the declaration in the case at bar, not only in so far as it is based on personal injuries, but also for the injury to plaintiff's real property, would not have survived the death of the wrongdoer, even if a suit had been brought before his death, in which case the action would have abated; nor, under the common-law, would such cause of action have survived so as to authorize a new suit by the injured party or parties against the personal representative of the deceased tort feasor.

It remains however, for us to consider whether the common-law was so changed and modified by the act of No-

vember 23, 1828, Sec. 30, now appearing, in substantially the same language as the original act, as Sec. 4211 of Comp. Gen. Laws, as to authorize the institution and maintenance of such a cause of action for either the personal injuries to the wife or the damage done to the real estate, or for both, against the administrator of the deceased *tort feasor,* such as is contained in the declaration in this case. This section as it appears in the Compiled General Laws of 1927, after being italicized by me, reads as follows:

4211. (2571) SUITS FOR PERSONAL IN-JURIES.—*All actions for personal injuries* shall die with the person, to-wit; Assault and battery, slander, false imprisonment, and malicious prosecution; *all other actions* shall and may be maintained in the name of the representatives of the deceased. (Nov. 23, 1828, Sec. 30).

In the case of Jacksonville Street Railway Company v. Chappell, 22 Fla. 616, 1 So. 10, decided in the year 1886, it was held that this statute did not change the common-law rule as to actions for personal injuries, and that the action in that case, which was in tort to recover damages resulting from personal injuries received by a passenger through the negligence of a common carrier, abated on the death of the plaintiff, and could not be revived by his personal representative.

In Jones v. Townsend, 23 Fla. 355, 2 So. 612, decided in 1887, it was held that under the common-law and the statute above quoted, the right of action for libel dies with the plaintiff, and the action can not be revived in favor of his personal representative. In the opinion of MR. JUSTICE RANEY in that case, it was said:

"Turning to the act of November, 1828, and taking a general view of either the whole of Section 30, or of it and Section 28, we are satisfied that the purpose of the Legislature was simply to provide that *all actions for personal injuries should die with the person, and that all other actions should survive.* The enumeration (immediately after the plain and broad declaration that here-

after all actions for personal injuries shall die with the person, of only some of those personal injuries actions for which did so die at common-law, does not show an intention that the general declaration of the act should be qualified by such enumeration; particularly does this seem to be the case when we find, immediately following, the positive declaration that all other actions shall be maintained in the name of the representative of the deceased. Suppose we assume that the framer of the bill at the time of drawing it could recall no other personal injuries, the right of action for which died with the person, is it not still plain that his purpose was to provide that *all* actions for personal injuries, whatever the injury, should so die? Is this real intent to be defeated by an omission in the enumeration of the injuries? Looking at the entire language of this section 30, we must either hold that the injuries stated were given as examples, or, which we cannot well do, that the Legislature was ignorant of the common-law, and if we make the latter assumption there is still a clear intent that all actions for personal injuries should die. To hold that the enumeration controls the plain and strong declaration of the section is to give the statute an effect contrary to the plain sense of all other expressions of the section, and to expound it neither according to its letter, considered as a whole, nor its evident meaning. In view of the language preceding the 'to-wit'; the intention was clearly one reaching all actions for personal injuries, and if we should even say that the understanding of the Legislature was that the injuries enumerated were all those which at common-law ceased to be actionable on the death of the person was not the intent of the Legislature, still that *all* actions for personal injuries should die? Is not an intention to enumerate all, though not carried out, to be sustained where the other language of the statute shows clearly that there was such intention. A thing which is within the object, spirit and meaning of a statute, is as much within the statute as if it were within the letter of it. Potter's Dwarris, p. 179. An action based on a libel or other personal injury not enumerated is as much within the meaning, and even the letter of this act, looking at its context, as one based on slander or other enumerated wrong. Judges are to look

at the language of the whole act, and if, upon a view of the whole, they can collect from the more large and extensive expressions the real intent of the Legislature, it is their duty to give effect to the larger expression, though there be in a particular clause of the act an expression not so large or extensive as those used in other parts.''

In Close v. Cunningham, 99 Fla. 1099, 128 So. 429, the plaintiff brought as action for personal injury alleged to have been caused by the negligent operation of a motor truck, and while the case was pending, the defendant died. It was held in that case that under said section 4211 the action died with the person and could not be revived against the personal representative of the deceased defendant. The judgment of the court below was affirmed, in a Per Curiam opinion, on the authority of Jacksonville Street Railway Company v. Chappell and Jones v. Townsend, supra. In a concurring opinion by the writer, attention was called to the fact that the statute above quoted had been embraced in the Rev. Stats. of 1892, which was adopted by the legislature, and also in subsequent compilations of our general laws, in the light of the construction theretofore placed on it by this court in the two early cases above cited, and that such construction should be allowed to stand; that if any change was adopted, it should be left to the legislature, and not the courts, to make it. It is a well settled principle of law that in the adoption of a code of revision of the law, the legislature is presumed to have known the judicial construction which had been placed on a former statute embraced therein; and therefore the re-enactment in the code of substantially the same provisions as those contained in the former statute is a legislative adoption of the known judicial construction. 36 Cyc. 1168, and cases cited. This court has extended this principle somewhat farther by holding that the adoption by our legislature of the statute of another State had the effect of adopting, as forming an integral part of the same, the known and set-

tled construction placed thereon by the courts of the State from which it has been adopted, in so far as that construction is not inharmonious with the spirit and policy of our own general legislation on the same subject. This too, is a well settled rule. See Duval v. Hunt, 34 Fla. 85, 15 So. 876; Florida Central, etc. Railway Company v. Mooney, 40 Fla. 17, 24 So. 148; Atlantic Coast Line Railroad Company v. Beasley, 34 Fla. 311, 45 So. 761. This rule does not necessarily mean that in adopting or re-adopting a statute the legislature necessarily adopts all of the expressions which may have been contained in the opinion of the court construing it, by way of *obiter dictum*, dealing with matters not necessarily involved in the decision of the case.

It will be found from a careful reading of the two early cases construing what is now section 4211 C. G. L., Jacksonville Street Railway Co. v. Chappell, 22 Fla. 616, 1 So. and Jones v. Townsend, 23 Fla. 355, 2 So. 612, that it has been definitely decided in this State that an action in tort for personal injuries of any sort is abated by the death of either plaintiff or defendant, and cannot be revived against a personal representative of either; that in such cases, not only the action dies with the person, but the cause of action itself dies, as was the case at common-law.

This tort action was not brought against the wrongdoer during his lifetime, but was brought against the administrator of his estate after his death. Defendant in Error for this reason, contends that the *action* not having been brought before the death of the wrongdoer, the entire *cause* of action died; that under the statute only *pending* actions can survive. The exact question here is not whether such an action, pending at the time of the tort feasor's death, survived, or abated subject to the right of the plaintiff to revive it or bring a new suit against the administrator, but whether the cause of action or, as it is sometimes called,

the right of action, set forth in the declaration, survived the death of the tort feasor, so as to enable the injured party to bring an action therefor against the administrator of the deceased tort feasor. This distinction between the right, or cause, of action, and the action itself, is not clearly made in some of the decisions, text books, or statutes, dealing with this subject. The reason no doubt is, that the action and the right of action generally stand or fall together, and are considered together. For, generally speaking, if the right of action fails or abates, the proceeding to enforce it cannot be maintained and will fail also. And likewise, if the only available form of action by which a right may be enforced, abates, the right of action, for all practical purposes, falls with it. A right without a remedy for its enforcement is an empty abstraction and usually of little or no value to its possessor. In commencing the treatment of the subject of abatement by death, the author of the text in Corpus Juris (1 C. J. 153) says:

"The death of a person in whose favor or against whom a cause of action has accrued may operate to abate the right of action itself, so that no action can be afterward commenced by or against his personal representatives, nor an action brought by or against him before his death revived and continued by or against his personal representatives; and even when a cause of action survives, a pending action thereon may abate on the death of a party. It is proposed therefore to treat together in this chapter both the abatement and survival of causes of action by death without regard to whether an action has already been commenced, and the abatement and revival of pending actions. It will be seen that the two subjects are so closely connected that they can not be separately treated without almost endless repetition."

Surely the legislature, in adopting in 1828 the statute now appearing as section 4211, C. G. L., intended to make some change in the common-law as it then existed; otherwise there would have been no need for the adoption of the statute. And the statute did change the common-law

by providing that all other *actions,* other than those for personal injuries, should survive. As will appear from a reading of the opinions of this court in Jacksonville Street Railway Co. v. Chappell and Jones v. Townsend, this court construed the first clause of this statute, which reads, "all actions for personal injuries shall die with the person", to be declaratory of the common-law, which was to the effect that all actions, and rights of action, for personal injuries died with the person. So far, the statute was merely declaratory of the common-law concerning actions and rights of action for personal injuries, which was tersely stated by Lord Mansfield when he said that, "the wrong and the wrongdoer die together." So evidently the legislature did not mean merely that all *pending* actions, suits already brought, should die with the person. And for the same cause it would not be reasonable to hold that the additional clause, reading "all other actions shall and may be maintained in the name of the representatives of the deceased," should be confined to actions pending at the time of the death of the deceased party. I am inclined to the view that in the second clause as well as in the first clause of this statute, the legislature used the word "actions" in a broad, generic sense, intending to comprehend thereby both *actions* and *rights of action.* Thus, in section 4211, C. G. L., where it is said: "Any civil action at law may be maintained in the name of the real party in interest," this manifestly means, not only that the nominal plaintiff may be stricken out and the case proceed in the name of the use plaintiff, but that the real party in interest may commence the suit in the first instance. The legislature did not say that all other actions already begun or pending shall and may be maintained, etc., but it said that "all other actions shall and may be maintained in the name of the representatives of the deceased."

Defendant in Error, in addition to contending that the statute applies only to pending suits, also contends that

such "other actions" may only be maintained by, and not against the personal representative of the deceased. This contention is not tenable. In 1 C. J. 177, it is said: "Where by statute an action survives against the personal representative of a defendant, it must also be considered as surviving in favor of the personal representative of plaintiff, even though there is no express provision to that effect." See also Brill v. Jewett, 262 Fed. 935.

Defendant in Error further contends that while statutes intended to aid the survival of actions, being remedial, are to be liberally construed, statutes in aid of the survival of *causes of action*, being in derogation of the common-law, are to be strictly construed; citing among other cases, Wynn v. Tallapoosa Bank, *supra*. It is said in 1 C. J. 177, that this holding is not in accordance with the weight of authority. But our controlling purpose is to ascertain, from the language of the statute, construed in the light of the harsh background of the common-law, of this particular subject, what the legislature really intended by the language used in its enactment; and certainly it must have intended to make some change and afford some relief from the then existing rigor of the common-law governing such subject. In the opinion of MR. JUSTICE RANEY, in Jones v. Townsend, he said: "Turning to the act of November, 1828, and taking a general view of either the whole of section 30, or of it and section 28, we are satisfied that the purpose of the legislature was simply to provide that all actions for personal injuries should die with the person, and that all other actions should survive." Construing this language in the light of the other language in the opinion, it is quite plain that JUSTICE RANEY meant not only pending actions, but rights of action as well. Thus in the early part of the opinion he says: "If the right of action did not survive to the personal representative of the intestate, the above order should not have been made, and all subsequent proceedings are erroneous." And again

he says: "What innovation or alteration of the common-law can be presumed from the act either to have been 'absolutely required,' or to have been intended, as to the actions or causes of action mentioned, when the language of the act is a mere declaration of what the common-law is as to such actions or causes of action?"

My conclusion therefore is that under the settled construction long since made by this court, said section 4211 means that all actions and causes of action for personal injuries shall die with the person, as at common-law; but that it must also have meant necessarily that all other *causes of action,* as well as pending actions, excepting those for personal injuries, should survive, because it goes on to say that "all other actions shall and may be maintained in the name of the representative of the deceased." If the right to maintain such "other actions" is to be effective, it follows that the causes of action, on which such "other actions" are based, must necessarily have been intended to survive, otherwise there would have been no use to say that: "all other actions shall and may be maintained in the name of the representative of the deceased." In other words, at common-law and under the statute, *the cause of action,* for personal injuries, died with the person, and necessarily any *action* that had been brought thereon died with it; neither the action nor the cause of action survived; but, under the statute, *all other actions and also causes of action* would survive the death of either of the parties, hence making it sensible and reasonable to say that: "All other actions shall and may be maintained in the name of the representative of the deceased. This construction is not in conflict with our previous decisions.

Eliminating for the moment that part of the declaration which seeks damages for the medical expense occasioned by the injuries to the plaintiff's wife and for loss of her services and companionship, and considering only the allegations as to the wrongful act charged and the

damage thereby caused to plaintiff's dwelling—his real property, the suit in this latter aspect is certainly not a suit for damages for personal injuries, but is one for damages to real estate, and hence, under our statute above discussed, the *right or cause of action* therefor survived the death of the tort feasor and the plaintiff had the right to bring his action therefor against the tort feasor's administrator. So the declaration contained the statement of a good cause of action in this respect, and the demurrer to the declaration was therefore improperly sustained, inasmuch as a demurrer should not be sustained to a declaration as a whole unless it wholly fails to state a cause of action.

The right of action on the part of the husband to recover for the loss of his wife's services and companionship, as well as for necessary medical and other expenses occasioned by assault and battery or other personal injury committed on her, was recognized at common-law. 13 R. C. L. 1416; 30 C. J. 697. And this right is at least impliedly recognized by section 4226 C. G. L. But at common law this right of action in the husband was abated by the death of the wrongdoer, or by the death of the husband. 1 R. C. L. 46. There is considerable conflict in the decisions in this country, under the various statutes changing or modifying the common-law rule as to the survival of actions, and causes of action, which it would serve no useful purpose for us to review here. As we have seen, our statute, 4211 C. G. L. provides that *all* actions for personal injuries shall die with the person. This language is certainly broad enough to cover an action founded on a personal injury without regard to the nature of the damage claimed as arising therefrom. It is true that the loss of the wife's services, for which compensation is sought in this case, did not result from any personal injury to the plaintiff, but it did result from a personal injury to the wife, and this claim for damages is therefore, in effect, an ''action for personal

injuries." Manifestly, the injury to the plaintiff's wife, on which his claim for damages for expenses incurred, loss of services, etc., was founded, was an injury to her person and if there had been no personal injury to her there would have been no cause of action accruing to the husband. The language of the statute is not restricted to actions for injuries to the person of the plaintiff. There is nothing in the context to indicate that the words are used in a narrow sense, or that the actions for personal injuries which die with the person are only those brought by the person directly receiving the physical or other personal injuries. Plaintiff in Error contends that the statute should be construed to apply to cases for personal injuries to the plaintiff only, but the words of the statute are, "all actions for personal injuries shall die with the person." Among the Dictionary meaning of the word "for" are "hence; because of; on account of; in consequence of." See Demczuk v. Jenifer, 138 Md. 488, 114 Atl. 475. "At common-law tort actions do not survive, although property rights were incidentally affected." Howard v. Lunaburg, 57 A. L. R. 346; Regan v. Davis, 54 A. L. R. 1073; Ott v. Laufman, 68 Md. 56, 11 Atl. 580. Per contra, see Hey v. Prime, 197 Mass. 474, 84 N. E. 141, 17 L. R. A. (N.. S.) 570. The general question is reviewed in 1 R. C. L. 46-47 and some of the leading cases cited, but on account of the varying statutory provisions these decisions are not of much service to us in considering the question under our own statute. In the Chappell case, on page 624, 22 Fla. and page 10 of 1 So., in considering the question and as to whether or not the declaration in that case was in tort or on contract, the court says: "It is true it states as damages, expenses and loss of time, which naturally create a diminution of the intestate's personal estate; this, however, is no statement of a contract, and breach thereof as a cause of action, but only of damage sought to be recovered for in the action." And so it might be said here that while the

declaration in part claims damages to the plaintiff for expenses and loss of his wife's services etc., it is alleged that these damages arose from the personal injuries to plaintiff's wife caused by the tort of the defendant's intestate; and thus the suit remains, in essence, a suit for damages for personal injuries, insofar as this portion of the declaration is concerned, and hence that part of the cause of action died with the wrongdoer. This portion of the declaration was, I think, subject to a motion to strike, or for compulsory amendment. But, as above pointed out, that portion of the declaration claiming damages to plaintiff's real property caused by the alleged wrongful act of the defendant's intestate, is not an action for personal injuries, within the meaning of the statute and such cause of action survived, and constituted a good cause of action against the administrator of the deceased tort feasor, and the declaration not failing to state a cause of action, the demurrer was improperly sustained.

It has been suggested that section 4 of the Declaration of Rights changed or modified the effect of the statute as heretofore construed by this court. My idea is that section 4 of the Declaration of Rights was not intended, of its own vigor, to create any new rights or remedies which were not in existence at the time of its adoption, but was designed to protect the citizen in the use of the courts to enforce such rights and remedies as were recognized by the law at the time of the adoption of the constitutional provision and also such rights and remedies as might thereafter be created by law. It was not intended by this provision of the constitution that the courts should improvise remedies to enforce rights not recognized by law. The language of the constitutional provision is that, ''All courts in this State shall be open, so that every person, for any injury done him in his lands, goods, person or reputation, shall have remedy, by *due course of law,* and right and justice shall be administered without sale, denial or delay.'' Italics

supplied.) By using the words "due course of law," the constitution means, in my judgment, that the remedy must be one founded upon law, that is, the law existing at the time the remedy is sought to be enforced. As was said in the case of Tibbetts v. Olson, 108 So. 679, "The courts are required to administer rights 'by due course of law'," and that "The State has powers of selection and regulation within organic limitations; and legislative determinations, either as to subjects, or as to regulations, made in the due and orderly exercise of the law making power, are to be regarded as *prima facie* within the wide latitude of authority and discretion accorded to the law making body, when the enactment is not patently violative of controlling organic law." See headnotes 15 and 16 of the case cited.

While the common-law embraced some imperfections and some harsh features, it was so highly prized by our forefathers that they adopted it by legislative act, insofar as the same was not inconsistent with our own constitution and laws, and our courts showed their high appraisal of the value of the common-law by early adopting the rule that statutes in derogation of the common-law should be strictly construed.

Section 4211 C. G. L., as we have seen, was taken from a statute which was adopted in 1828. It was readopted by the legislature in the revisions of 1892, 1906 and 1920. This statute, in the first clause thereof, expressly says that "all actions for personal injuries shall die with the person," and this particular clause was held by this court in the early cases construing this statute to be "declaratory of the common-law." So if section 4 of the bill of rights is inconsistent with and nullifies the common-law on this subject, it also annuls the express provision of the statute of 1828, so many times readopted by the legislature after this judicial construction had been placed upon it. I cannot believe that such was the intention of this section of

the constitution; nor has it ever before been suggested, so far as I know. Surely, it was within the province of the legislature to enact that all actions for personal injuries shall die with the person, but that all other actions shall survive. That, in effect, was what was done by section 4211 C. G. L.

While I have been very much interested in the able presentation of the contrary view on this subject, I am not convinced that that view is sound, and I am afraid that its adoption would prove a dangerous precedent, a launching forth upon an uncharted sea. Can it be said that it is within the province of the judicial power to say to a litigant, that, on the facts of your case, the legislature has expressly denied you a remedy, but the courts will nevertheless give you one? If the courts can set aside that provision of 4211 C. G. L. which says that all actions for personal injuries shall die with the person, can it not also set aside the statute of limitations where a claim, honest and just in its inception, has been barred by lapse of time? I do not think that section 4 of the Declaration of Rights confers any legislative power upon the courts.

Furthermore, if the majority view, that section 4211 C. G. L. should be limited to meaning that only actions for "assault and battery, slander, false imprisonment and malicious prosecution," die with the person would this avail to change the conclusions reached by the writer in this case? In so far as the injuries inflicted upon plaintiff's wife were concerned, were they not inflicted by an assault and battery?

While I am reluctantly forced to conclude that in so far as the declaration claimed damages based upon the personal injuries inflicted upon plaintiff's wife, it was not authorized by the law. I concur with the majority that the court below erred in sustaining the demurrer to the declaration as a whole, for the reasons above pointed out,.

and that the judgment of the trial court should be reversed and the cause remanded.

ELLIS, J., concurs.