It is sufficient that probable cause for issuing the writ has not been shown. 2 Ency. of Pleading and Practice, p. 1083.

For reasons stated, the application of relator is refused, and his petition is dismissed.

---

(53 South. 225.)

No. 18,311.

STATE v. HOGG.

(June 30, 1910.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 656*) — CONDUCT OF JUDGE—REPROVAL OF DEFENDANT.

A person on trial for a crime may be guilty of contempt of court, and, where he is already in actual custody, it is no invasion of his rights for the trial judge to say to him: "If you were not already in jail, I would send you there, for contempt."

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1524–1533; Dec. Dig. § 656.*]

2. CRIMINAL LAW (§ 810*)—CONFLICTING INSTRUCTIONS.

Where a person charged with embezzlement reserves one bill, based on the theory of his being the partner (in business) of the prosecutrix, and others on the theory of his being married to her, there is manifest conflict between the different grounds of objection, since one cannot, under our law, be the husband and the partner in business of the same woman.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 810.*]

3. CRIMINAL LAW (§ 1173*)—APPEAL—HARMLESS ERROR — INSTRUCTIONS — PROPERTY OF ANOTHER.

In a prosecution for embezzlement, in which evidence is adduced tending to show that the property alleged to have been embezzled belonged to a partnership, of which the accused was a member, it would be reversible error for the judge to refuse to charge the jury that if they find that such property did, in fact, belong to the partnership, they should acquit the accused; but, where there is no such evidence, such refusal, coupled with a charge, given to the jury, in effect, that a partner may be guilty of embezzling the funds of the partnership, operates no injury to the accused, and the verdict will not be set aside on that account.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3164–3168; Dec. Dig. § 1173.*]

4. EMBEZZLEMENT (§ 8*) — OWNERSHIP — EMBEZZLEMENT BY HUSBAND.

A husband may be guilty of embezzling the property of the wife; though whether the same is true of the wife, with regard to the property of the husband, is a question which is not here decided.

[Ed. Note.—For other cases, see Embezzlement, Dec. Dig. § 8.*]

5. CRIMINAL LAW (§ 915*) — OBJECTIONS — TIME FOR TAKING—WAIVER.

It is too late for a party who has been convicted of a crime to make the objection on motion for new trial that he was prosecuted under the wrong name.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2152–2158; Dec. Dig. § 915.*]

6. CRIMINAL LAW (§ 968*)—MOTION IN ARREST—SCOPE OF INQUIRY—MATTERS COVERED BY VERDICT.

Matters cured by the verdict will not be inquired into on motion in arrest of judgment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2423–2444; Dec. Dig. § 968.*]

7. CRIMINAL LAW (§ 970*)—OBJECTIONS—MOTION IN ARREST.

Where an indictment is signed by the district attorney, properly identified as the work of the grand jury by the indorsement "A true bill," followed by the official signature of the foreman of the grand jury, and is shown to have been returned into court by the grand jury, the objection that it was not read "in open court, in the presence of the jury," comes too late, in a motion in arrest of judgment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2445–2462; Dec. Dig. § 970.*]

Appeal from First Judicial District Court, Parish of Caddo; Andrew Jackson Murff, Judge.

Will Hogg, alias Hall, was convicted of embezzlement, and he appeals. Affirmed.

John B. Files, for appellant. Walter Guion, Atty. Gen., and J. M. Foster, Dist. Atty. (R. G. Pleasant, of counsel), for the State.

MONROE, J. Defendant appeals from a conviction of embezzlement and sentence thereon. His first bill shows that the judge asked him several times (he being, as we understand, a witness in his own behalf) whether he had ever obtained a license to be married to the prosecutrix, whose money he is charged with having embezzled, and that he refused to answer, whereupon the judge told him, if he were not in jail already, he would send him there for contempt, to which remark there was objection and the bill. The objection was not good. Defendant as a witness was subject to cross-examination, and, though on trial, was capable of committing contempt of court, and was liable to punishment therefor. Being in actual custody, however, it was no invasion of his rights for the judge to make the remark complained of. Bills 2, 3, and 4 show (2) that defendant requested the judge to charge the jury, "If you find that the check represented partnership funds, then, and in that event, he is not guilty of embezzlement"; (3) that he objected to the testimony of Lizzie Hall on the ground that she was his wife; (4) that he objected to the refusal of the judge to charge, "If you find that William Hall and Lizzie Hall were married, then he is not guilty." Following the objection to the testimony of Lizzie Hall, bill 3 proceeds:

"The agreed state of facts is as follows, tending to show marital relations: The evidence showed that the man and woman had lived, as many negroes do, as man and wife, but had never been married, and that, while she referred to him as her husband, no marriage had ever been executed. They had lived together for several years, and he left her and was gone nearly a year and returned, and had been back for about three weeks, and left her again, with her property and against her will. Whereupon the court overruled the objection, for the following reasons as above stated. And thereupon counsel for defendant took this their bill of exception, and, having submitted the same to the counsel for the state and the court, prayed the judge to sign the same."

And the bill was signed accordingly. There is manifest conflict between the position taken by defendant in bill 2 and that taken in bills 3 and 4; for, if Lizzie Hall was his wife, she could not, under our law, be his business partner. His counsel says, in his brief, that, if there had been an agreement such as that referred to in bill 3, it ought to be in the record, and speak for itself; and we concur in that view. We take it, however, that the trial judge concluded from the testimony, or lack of testimony on the subject, that it was either actually or virtually conceded that there had been no marriage between the defendant and the prosecuting witness, and that conclusion finds support in bill 5, in which defendant himself recapitulates the testimony from his point of view. On the other hand, as we have observed, the theory of a partnership propounded in bill 2 is irreconcilable with that of marriage propounded in the other bills. Beyond that, the trial judge dealt with the matter as though the question of partnership vel non and marriage vel non were both presented by the evidence for the consideration of the jury, since, having refused to give the special charges recited in bills 2 and 4, he instructed the jury:

"(2) That partnership funds could be embezzled; that it all depended upon the facts connected with the transaction. If the funds had been intrusted to a partner for a specific purpose and were appropriated for the taker's use to defraud another, it would be embezzlement."

"(4) That a husband or wife would embezzle the separate funds of another, where they had been entrusted for another purpose, and where it was not under the control of the one appropriating the same to his or her use, and was done to defraud the other."

Considering the ruling presented by bill 2, and the charge therein recited, we make the following excerpts from Mr. Bishop's New Criminal Law (8th Ed.) vol. 2, p. 185 et seq., to wit:

"(4) This chapter, wherein it is assumed that the reader has before him his own statutory laws, will seek to point out the leading interpretations, but not to supersede the looking and thinking, which is the duty of the reader. And he is cautioned that what an English court or that of a sister state has held under a provision differently expressed is not, as of course, accepted as a rule for his own tribunal.

"Sec. 325. * * * This offense being statutory, and the statutes varying in their terms, there can be no definition of embezzlement applicable to all the statutes. In a general way the wrong may be described as the embezzlement of property designated in a particular statute by the persons and under the circumstances specified therein. * * * Looking for such a definition as the nature of the subject permits to be applied to diverse and unknown statutes, some extending the offense to greater numbers of classes of fiduciary persons and to more kinds of property than to others and some, requiring different circumstances of possession from others, the following may be helpful: Embezzlement is the fraudulent misappropriation by a servant or other person within the terms of the statute of embezzlement of such property as the statute makes the subject of it under the circumstances designated therein to the use of the embezzler, or otherwise to the injury of the owner thereof. * * *

"Sec. 330. * * * The doctrine of this subtitle is that, since embezzlement is a purely statutory offense, only persons within the statutory terms can be guilty of it. But one within those terms, for example, an 'agent' need not be such de jure. A mere de facto relationship suffices. * * *

"Sec. 348. Between 'servant' or 'clerk' and 'agent' the books disclose a distinction demanding careful attention. Thus, as already observed, it has been held that a person employed on commission to get orders for goods and receive payment for them is not the employer's 'servant or clerk,' if at liberty to get the order and receive the money where and when he thinks proper. 'To constitute the relation of master and servant,' said Erle, C. J., 'the inferior must be under more control than is implied by having the option of getting orders, with the right to receive a commission thereon.' Yet such a person is undoubtedly an agent. * * *

"Sec. 342. * * * One cannot be a servant to himself. Therefore, if a company whereof he is one owns the business he is employed in, he cannot be its agent, servant, or clerk. * * *

"Sec. 345. * * * (2) * * * One cannot be the servant of the firm whereof he is a member, since thus he would be a servant to himself," etc.

The present English statute (24 & 25 Vict. c. 96, § 68, quoted in the volume above referred to at page 185, § 323) reads, in part, as follows:

"Whosoever, being a clerk or servant, or being employed for the purpose or in the capacity of a clerk or servant," etc.

Our statute is much broader and includes many other classes of persons in its grasp than clerks and servants. It reads in part:

126 La.—34

"Sec. 905 [Rev. St.] Any servant, clerk, broker, agent, consignee, trustee, attorney, mandatary, depositary, common carrier, bailee, curator, tutor, or any person holding any office of trust under the executive or judicial authority of this state, or in the service of any public or private corporation or company, who shall wrongfully use, dispose of, conceal, or otherwise embezzle, any money, * * * or any other property which he shall have received for another, or for his employer, principal or bailor, or, by virtue of his office, trust, or employment, or which shall have been entrusted to his care, keeping, or possession, by another, or by his employer, principal, or bailor, or by any court, corporation, or company; upon conviction thereof, or of having aided or abetted * * * shall suffer imprisonment," etc.

According to the established and well-nigh universal jurisprudence, when the foregoing statute was adopted and since, a partner could not be guilty of embezzling the property of the firm of which he was a member for two reasons (the merits of which we will not now inquire into), to wit, that he could not be the agent, clerk, or servant of such firm, and that as to him, the property of the firm is not the property of another in the sense of the law. In 1888 the General Assembly passed an act (No. 31) purporting to amend and re-enact section 905 of the Revised Statutes, but which re-enacts the section without amending it, so far as we can see. It is true that no case seems to have arisen in this state in which the question here at issue has been presented, but we imagine that it is because it has been so well settled that a partner cannot embezzle partnership property (under a statute relating to an agent, clerk, mandatary, etc., misappropriating, etc., property received "for his employer, principal or bailor, or by virtue of his office, trust or employment, or which shall have been entrusted to his care, * * * by another," or by his employer, etc.) that no prosecutions for such supposed offenses have been instituted. In some states, where the intention was to include partners dealing with partnership property, it has been so expressly provided, and we are of opinion that such a course would

have been pursued by the General Assembly of this state, if it had had the purpose mentioned in view. As the matter stands, we should feel rather as if we were amending and enlarging the scope of the statute than construing it if we were to give it the application contended for by the state. We therefore conclude that there was error in refusing the requested charge as recited in the bill 2 and in the charge given; but we fail to find that defendant was prejudiced thereby, since his position with regard to his marriage is irreconcilable with the idea of a partnership, and there is nothing in the record to indicate that there was any evidence offered tending to show a partnership between him and the prosecutrix. On the other hand, we think the trial judge ruled correctly in refusing the charge recited in bill 4, and that there was no error, to the prejudice of the defendant, in the charge given, to the effect that a husband or wife may embezzle one another's funds, though, in view of the presumptions of our law in regard to the dominating influence of the husband, we prefer to reserve for future consideration the question whether the wife can be guilty of embezzling the property of the husband. Defendant's bill No. 5 was reserved to the overruling of a motion in arrest of judgment. It begins as follows:

"Be it remembered that in the trial of the motion for new trial, and later, on the motion in arrest of judgment, counsel called to the attention of the court the evidence in the case, which was as follows [and then follows a recapitulation of the evidence, after which, the bill proceeds]. Counsel urges upon the court that under the above facts the verdict was not responsive to the evidence, and there was no embezzlement on the part of defendant, and that he placed the check made out in his favor in the bank for collection, which in law and under the charge of the court he had a right to do."

The court overruled the motion for new trial, and later the motion in arrest for the following reasons, to wit:

"Because the court felt satisfied that the verdict was correct and borne out by the evidence. Whereupon counsel took this, his bill," etc.

As we have no jurisdiction of the facts, this bill brings up nothing that we can review. The motion for new trial sets up that the verdict was contrary to law and the evidence, and that:

"Defendant was being tried under the name of Wm. Hogg whereas, his true name is Wm. Hall, and that it convicts him of going under an assumed name."

The first point presents nothing for the consideration of this court; and the second is without merit in a motion for new trial. The motion in arrest of judgment sets up several alleged defects or irregularities, which, if they existed, were cured by the verdict. It also alleges that the minutes of the court do not show that the indictment was a "true bill." The indictment is signed by the district attorney, and has indorsed upon it the title and number of the case, and the words and signatures: "Embezzlement. A true bill. W. E. Glassell, Foreman of the Grand Jury," together with the date of the filing in court, and the return of the clerk, showing its service on the defendant. Also, the verdict of the petit jury reading:

"We, the jury, find the prisoner guilty of embezzling the amount of one hundred and twenty two 25% dollars ($122.25). E. R. Bernstein, Foreman."

The minutes of the court read:

"And now comes the grand jury to make this partial report, and, with leave of the court, presents to the court the following bills of indictment, which the court ordered filed and made of record, and the sheriff is authorized to take bond in each case, as fixed by the court: State of Louisiana v. William Hogg, alias Hall, Embezzlement."

Which minute entry corresponds in date with that of the filing of the indictment. In State v. Logan, 104 La. 254, 28 South. 912, to which counsel for defendant refers, the verdict was set aside, because the words, "a true bill," followed by the signature of the foreman of the grand jury, were not indorsed on the back of it. It is true that it was remarked in the opinion as additionally show-

ing that the indictment in question was not sufficiently identified as the work of the grand jury that the minutes did not show that either the indictment or the indorsement thereon was read in open court in presence of the jury, and that they did show that there was a discrepancy between the minute entries of the indorsements and the indorsements themselves as they appeared on the indictment. In the instant case, the indictment is properly identified by the signature of the foreman as the work of the grand jury, and is shown to have been properly and regularly returned into court and made of record. Defendant was thereafter arraigned and pleaded, and later was tried and convicted, and throughout the proceedings made no complaint that the indictment was not read in the presence of the jury. Such complaint came too late in a motion in arrest of judgment.

Finding no reversible error therein, the judgment appealed from is affirmed.