LAND, J.
 

 Defendant was tried and convicted of the crime of assault by willfully shooting at Louis Lapuyade, and was sentenced to imprisonment in -the state penitentiary at hard labor for a term of not less than one nor more than three years.
 

 He relies for the reversal of the conviction and sentence upon the following grounds set out in a motion for a new trial:
 

 1. The verdict of the jury is contrary to the law and the evidence. This ground presents no question of law to be reviewed.
 

 2. Defendant was prosecuted under an information against Arthur Gardner, when in fact defendant’s name is Arthur Gordon.
 

 Defendant was arraigned under the name of Arthur Gardner, and pleaded not guilty to the information, without objection to the name by which he was designated. He was identified on the trial as the party committing the offense. It is too late on a motion for a new trial for a defendant to set up that he was prosecuted under a wrong name. State v. Turner, 25 La. Ann. 573; State v. Hogg, 126 La. 1053, 53 So. 225, 29 L. R. A. (N. S.) 830, 21 Ann. Cas. 124.
 

 3. That Louis Lapuyade, prosecuting witness,- did not give true and impartial testimony, as defendant proposed to prove by Jules Alexander, the newly discovered witness.
 

 It is well settled that. a verdict Will not be set aside and a new trial granted to
 
 *119
 
 enable defendant to impeach the testimony admitted on the trial. State v. Johnson, 149 La. 922, 90 So. 257; State v. Prenett, 142 La. 720, 77 So. 514; State v. Bordelon, 141 La. 611, 75 So. 429.
 

 It is alleged in the motion for the new trial that the newly discovered witness would testify that the prosecuting witness and his father, a state witness, were the aggressors; that defendant acted in self-defense; that he was attacked by the Lapuyades, who were then and there armed with heavy meat cleavers; and that defendant fired up in the air and not at Louis Lapuyade.
 

 The testimony of all the state witnesses and of all the witnesses of the defendant taken on the trial, as well as that of the newly discovered witness, is in the record. It is clear from a review of this testimony, in connection with the newly discovered evidence, that the testimony of the newly discovered witness is impeaching as to the state witnesses and cumulative in part as to the witnesses of the defendant, as to firing the shot in the air. As to self-defense, the prosecuting witness and three state witnesses testify that at the time the defendant fired the shot at Louis Lapuyade, Sr., no hostile demonstration of any kind was made by the latter. The elder Lapuyade had walked out of his butcher shop on the sidewalk, unarmed, when he was assaulted. The defendant himself testified on cross-examination:
 

 “Me and old man Lapuyade didn’t have any trouble; I shot in the air to keep them from killing me.” Tr. p. 43.
 

 The shooting at Lapuyade, Sr., was preceded by a difficulty between defendant and Eugene Lapuyade, the son of Louis Lapuyade. The defendant on direct examination had testified as follows:
 

 “He (Ernest Lapuyade) then ran in the shop and came out and struck me in the back with a cleaver. I caught his arm, and his father (Louis Lapuyade) and mother rushed out and caught me in the back, and I broke loose and ran around to Millaúdon street, where I lived, and got a pistol and came back and passed in front of his shop and the old man said, ‘You back here again?’ and the young man came out with a cleaver again and I shot. Q. How did you fire that shot? A. I don’t know. I was excited. I don’t know what became of the gun.” Tr. 42.
 

 After the first difficulty, the defendant returned in 20 or 30 minutes with the pistol in his hand, as testified by his own witnesses, and was cautioned by one of his witnesses to come away from the vicinity of the butcher shop of the Lapuyades and not to have any trouble. Defendant did not heed this advice, but remained standing in the street and fired the shot. Tr. 31.
 

 Neither the defendant nor any of his witnesses testified that the elder Lapuyade had any weapon in his hand, when defendant fired the first shot. They state that during the first and the second encounters Eugene Lapuyade, the son, had a cleaver, and that after the shot was fired, Eugene went into the butcher shop and returned with a shotgun. The defendant was evidently the aggressor in the second difficulty. He had left, after the first quarrel, and had returned with a pistol in his hand, and had stationed himself in the street in front of the shop, and had fired at Lapuyade, Sr., as soon as he walked out of the butcher shop onto the sidewalk. The testimony of defendant and one witness that he fired the shot in the air is incredible and suspicious, for these witnesses testify that the younger Lapuyade, armed with a cleaver, at the time, was advancing upon defendant, and was within a few feet of him. The elder Lapuyade testifies that the bullet whizzed by his head, and the state witnesses also testify that defendant attempted to fire a second time, but that his pistol snapped. It is also unreasonable to believe that any reasonable man would return to the scene of the conflict with a
 
 *121
 
 pistol in Ms band, if he did not intend to provoke a second difficulty, especially after lie had been assaulted and beaten, as testified by his witnessesi As testimony to impeach the state witnesses, the newly discovered evidence is not admissible. As cumulative evidence, it is not available, for the reason that the evidence on the trial showed that there' was no overt act at all on the part of the party assaulted, and that the defendant provoked the second difficulty. It was completely shown by the testimony that there was no element of self-defense in the case. Not a single witness for either the state or the defense testified that Lapuyade, Sr., was armed, or had a meat cleaver, at the time of the shooting. On the contrary, all of the witnesses testified that he did not. The testimony of the newly discovered witness that the young man and the old man came , out of the butcher shop, and that each had a cleaver, is therefore suspicious and incredible, and fully justified the trial judge in disbelieving the testimony of the newly discovered witness.
 

 “The trial judge should consider whether false swearing has been resorted to to set aside the verdict and obtain a new trial. His discretion in that regard is, of course, not unlimited or arbitrary, but refers particularly to his determining whether the defendant has used due diligence to procure the evidence before the trial, and whether it was in fact newly discovered or seems suspicious.” State v. Glover, 140 La. 732, 73 So. 845.
 

 The Lapuyades were sued in the civil district court by one Ooleman for damages for assault and battery. It seems that Ooleman was a helper on the truck driven by defendant, and, according to the testimony of Ernest Lapuyade, the difficulty arose because the defendant approached the butcher shop while driving his truck at a rate of 25 miles an hour, and tried to run over his son. Tr. 24. According to the testimony of the defendant, the difficulty originated from Eugene Lapuyade’s kicking a colored boy, who, while swinging a white boy around on the sidewalk,' struck the little son of Eugene Lapuyade. Defendant interfered and the encounter ensued. •
 

 It is immaterial whether the difficulty originated in the one way or the other, as both versions as to its beginning went to the jury. Whether the Lapuyades unlawfully assaulted Coleman is a matter wholly irrelevant, as far as the present case is concerned. The details of the evidence in the civil case were not admissible in the present casé, for the further reason that the clear purpose of such testimony was to show the bad reputation of the Lapuyades for peace and quiet by proof of a specific act. This is not permissible, as general bad character must be established by testimony as to general reputation. State v. Guy et al., 106 La. 8, 30 So. 268; State v. Jackson, 44 La. Ann. 160, 10 So. 600; State v. Hobgood, 46 La. Ann. 855, 15 So. 406.
 

 4. That defendant is of good reputation for peace and quiet, and that he is entitled to and desires to present to a jury, in any event, the matter of recommending a suspension of sentence.
 

 The trial judge states that the defendant had a fair trial and that the evidence sustained the verdict. Aside from the question as to whether testimony as to good character is newly discovered evidence, such testimony is useless against clear evidence of guilt, and is not, in itself, sufficient basis for a new trial. State v. Nicholls, 50 La. Ann. 707, 23 So. 980; State v. Riculfi, 35 La. Ann. 770; State v. Simon, 131 La. 528, 529, 59 So. 975.
 

 The defendant made no effort to obtain a suspension of sentence during the trial. He introduced no evidence as to his general reputation, and made no request that the jury be charged as to their right to recommend a suspended' sentence. If a
 
 *123
 
 defendant can neglect' to take 'action as to a suspension of sentence in ' á felony cáse under Act 74 of 1914, until after conviction, arid can make application thereafter for such suspension in a motion for a new trial, on the ground that he desires to introduce before the jury the necessary. evidence as to his general reputation and nonconviction before of any felony, it is self-evident that he can obtain a new trial in every case of conviction, by willfully neglecting to present, on the trial, the proof upon which he bases his claim to a suspended sentence Act 74 of 1914 clearly does not authorize such' belated procedure in felony cases. In section 1 of said act it -is declared that — •
 

 “The court may suspend the sentence when the jury shall find in their verdict that the defendant has never before been convicted of a felony in this state or any other state and shall recommend that the sentence be suspended.”
 

 This provision of the act clearly contemplates that an accused in a felony case shall present the evidence justifying a suspension of sentence to the jury at the time of the trial and before verdict, and not after a conviction in a motion for a new trial. It would be a proceeding unprecedented if a defendant could take advantage of his own laches in felony cases, and then obtain a new trial in a case, where the verdict was sustained by the evidence, for the sole purpose of presenting a claim for a suspension of sentence to a new jury. Such application necessarily comes too late.
 

 -5. That there is pending in the criminal district court of the parish of Orleans a charge against Lapuyade for the attack on the said Coleman.
 

 The sole purpose of proving such charge would be to discredit the testimony of Lapuyade as a state witness. Such evidence cannot be made the basis of a motion for new trial.- A defendant has ample opportunity on-the trial-of the case.to cross-examine state witnesses as to charges and convictions' against them, and to prove' their general rep-, utation for truth and veracity.
 

 The conviction and sentence appealed from-are therefore, affirmed..