**STATE OF FLORIDA v. JAMES ROBERT HERNDON**

27 So. (2nd) 833          June Term, 1946
November 8, 1946          En Banc

*J. Tom Watson,* Attorney General, *Reeves Bowen* and *Shannon Linning,* Assistant Attorneys General, *Robert R. Taylor,* County Solicitor, and *John C. Wynn,* Assistant County Solicitor, for appellant.

*Hubbard & Carr,* for appellee.

TERRELL, J.:

Appellee was charged with the larceny of the separate property of his wife. A motion to quash the information was granted and the State appealed. Can a man steal from his

wife? is the sole question presented. The fact that this question was more than one hundred years reaching our docket affords the old and respected order of Benedicts at least one morsel to crow over.

The motion to quash was granted on the theory that the common law fiction, the unity of husband and wife, was of force in this State. By that fiction the personality of the wife is merged into that of the husband and the marriage vested the ownership of the wife's property in the husband. It is contended that such is the law so long as the marital relation exists, unless repealed by statute.

We think this common law rule has been abrogated in Florida by the Constitution and the statute. Section 1 Article 11, of the Constitution provides that "all property, real and personal, of a wife, owned by her before marriage, or lawfully acquired afterward, by gift, devise, bequest, descent or purchase shall be her separate property, and the same shall not be liable for the debts of her husband and without her consent given by some instrument in writing executed according to the law respecting conveyances by married women." Section 708.03, Florida Statutes, 1941, authorizes the husband to manage the wife's property but gives him no legal or equitable title in it. Gentry-Futch Co. v. Gentry, 90 Fla. 595, 106 So. 473.

Chapter 12255, Acts of 1927, Section 708.04, Florida Statutes, 1941, authorized the wife to dispose of her personal property and choses in action without the joindure of her husband. Section 708.06, Florida Statutes, 1941, gives the wife absolute control of her wages and earnings and authorizes her to sue and recover them as though she were a single woman. In 1943 the Legislature abrogated every trace of the common law fiction, the unity of husband and wife, insofar as it relates to her separate personal property. Chapters 21696 and 21932, Sections 708.07, 708.09 and 708.10, 1945 Cumulative Supplement to Florida Statutes 1941, sometimes referred to as the "Woman's Emancipation Acts."

In our view, Section 1, Article 11, of the Constitution abrogated the common law unity of husband and wife insofar as it relates to her separate property, whether it be per-

sonalty or realty. True, it is by implication, but it could have no other purpose, the repeal by implication is no less effective than direct repeal. The statutes listed did nothing more than particularize the constitutional provision in relation to her separate personal property. Other statutes give the wife a dower right in her husband's personal and real property which he may not dispose of by will. To say that the husband cannot will his wife's interest in his estate but can turn around and steal it does not click. Beasley v. State, 138 Ind. 552, 38 N.E. 35; Hunt v. State, 72 Ark. 241, 79 S.W. 769; People v. Graff (Calif.), 211 Pac. 829; State v. Koontz, 124 Kan. 217, 257 Pac. 944; State v. Shaw, 79 Kan. 396, 100 Pac. 78.

It is not to be inferred from what has been said that every case in which one spouse appropriates the property or funds of the other may be classified as larceny. The element of intent must be one of the controlling factors in determining larceny here as elsewhere. The statute (Section 811.01, Florida Statutes 1941) provides that "whoever commits larceny by stealing of the property of another" . . . shall be punished, etc. Funds of one spouse used by the other to purchase food and clothing or family necessities would not be construed as larceny, but here the charge is for appropriating $5,000.00 of the wife's money. In the state of the law pointed out here we think it necessarily follows that even spouses must observe the difference between mine and thine and, if they fail, they do so at their peril.

We do not consider this holding in any sense amenable to the charge of judicial law making. It is quite true that under our scheme of things courts are not clothed with the power to enact laws in the first instance but they do have the power and it is their duty to keep legislative and constitutional enactments ambulatory, likewise it is their duty within the scope of their power to square the law with good morals and to harmonize constitutional and statutory precepts with reason and good conscience, otherwise they may become ridiculous when applied to changing concepts. Interpreting the law in the light of changing concepts is very different from promulgating the law in the first place. A court can no longer interpret the law from the back of an ass; the process is so slow that it

overlooks factors that require a different interpretation today from what might have been required yesterday. Before the turn of the century the question in this case might have re-quired a different answer.

In a society like ours, where the wife owns and holds property in her own right, where she can direct and use her personal property as she pleases, where she can engage in business and pursue a career, it would be contrary to every principle of reason to hold that a husband could ad lib appropriate her property. If the common law rule was of force, the husband could collect his wife's pay check, he could direct its use, he could appropriate her separate property and direct the course of her career or business if she has one. We think it has not only been abrogated by law, it has been abrogated by custom, the very thing out of which the common law derived. The only semblance of the common law fiction that still abides is the requirement that the husband join in conveyances of the wife's separate realty. He conveys no present title in this.

The judgment appealed from is, therefore, reversed.

Reversed.

CHAPMAN, C. J., THOMAS and ADAMS, JJ., concur.

BROWN and BUFORD, JJ., dissent.

BUFORD, J.: dissenting:

This appeal by the State brings for review an order of the Criminal Court of Record in and for Dade County quashing an information which, eliminating the formal parts, is as follows:

"ROBT. R. TAYLOR, County Solicitor for the County of Dade, prosecuting for the State of Florida, in the said County, under oath, information makes that JAMES ROBERT HERNDON of the County of Dade and State of Florida, on the 30th day of March, in the year of our Lord, one thousand nine hundred and forty-five, in the County and State aforesaid, did then and there unlawfully and feloniously take, steal and carry Five Thousand Dollars, lawful money of the United States of America, the separate property of Ethel R. Herndon, the wife of the said James Robert Herndon, a further and

more particular description of said money being to the County Solicitor unknown, being then and there of the value of more than FIFTY (50.00) DOLLARS, good and lawful money of the United States of America."

It is well recognized that at common law ordinarily one spouse cannot commit larceny of the other's goods. See 57 Am. Dec. 823 and cases there cited; 32 Am. Juris. page 957, Sec. 54.

We have no statute in this state which in terms abridges the common law in this regard. It appears that this inhibition continues as long as the husband and wife live together as such but it vanishes when the marriage relation has been either expressly or by direct indication abandoned. See Annotation 55 A.L.R. 558. If under the law of this State either spouse can be guilty of larceny from the other it is because of the statutes which we have adopted concerning the property rights of married women. See Chapter 708. Fla. Statutes 1941 and supplements thereto. The authorities are in conflict on the question as to whether such statutes change the common law rule in this regard. Some courts take the view that the effect of the statutes giving the wife exclusive control and authority over her personal property severs the unity of person and community of property existing between the husband and wife and that therefore the husband may be subject to prosecution for larceny for stealing the wife's goods or the wife may be likewise prosecuted for stealing the husband's property. Other courts have taken the view that the common law rule has not been changed by such legislative acts because these acts do not destroy the unity of person. See State of Ohio v. Phillips, 85 Ohio State. 317, 97 N.E. 976, 40 L.R.A. (N.S.) 142; Thomas v. Thomas 51 Ill. 162; Walker v. Reany 36 Pa. State, 410; State v. Winecroft, 76 N.C. 38; State v. Mathews, 76 N.C. 41; Snyder v. People 26 Mich. 106, 12 Am. Rep. 302.

We are persuaded to concur in the view expressed in these opinions and in this we are controlled very largely by the fact that under the common law the inhibition applied to husband and wife. If we should hold that the married womens property statute has the effect of raising the ban so that the

husband may be prosecuted for larceny for stealing the wife's property, it appears that there is no reason to assume that the law has been abrogated so that the wife may be prosecuted for larceny for stealing the husband's property. This is necessarily true because the rights of the husband in the control and management of his separate property have not been changed by the married womens property statute. Nor are there any other statutes in this state which change the common law rule that the wife may not be prosecuted for larceny for stealing the husband's goods. We have observed that some of the courts which have held the married women's property acts have changed the common law so that husbands may be prosecuted for larceny for stealing the wife's goods have specifically declined to say whether or not the effect of the statute would make the wife liable to prosecution for larceny for stealing the husband's goods on the ground that that question was not then presented. See State of Louisiana v. Hogg alias Hall, 126 La. 1053, 53 So. 225, 29 L.R.A. (N.S.) 830. That question is not presented here but it is pertinent to the matter which we have under discussion because if the effect of these married women's property statutes is to abolish the unity of person it must abolish that union as to both parties. The common law rule that one spouse may not be guilty of larceny by stealing the property of the other is based principally on the fiction of unity of person existing between the spouses. It has been said that this fiction, recognized in law as fact, was that the spouses are one and the same person and that the person is the husband. Probably no one could be found today who would have the termerity to make the latter assertion. We may add that we find some evidence that it was not the legislative intent to abolish entirely the doctrine of unity of person and community of property between spouses reflected in Sec. 708.10, 1945 Cumulative Supplement, Florida Statutes, 1941, which is as follows:

"708.10. Same; construction of law.—This law shall not be construed as (1) relieving a husband from any duty of supporting and maintaining his wife and children; (2) abolishing estates by the entireties or any of the incidents thereof; (3) abolishing dower or any of the incidents thereof; (4)

changing the rights of either husband or wife to participate in the distribution of the estate of the other upon his death, as may now or hereafter be provided by law; (5) dispensing with the joinder of husband and wife in conveying or mortgaging homestead property."

The fiction (if it be a fiction) of unity of person being consequent upon a man and a woman entering into the estate of matrimony is the foundation of the marriage structure and the corner-stone of its spiritual concept. If and when we shall have abolished that element of the most sacred relation known to the civilized world we shall then be ready to abandon the injunction, "Whom God hath joined together, let no man put asunder," and to reduce the marriage ceremony to a cold civil contract, stripped of all its sacred implications, shorn of all its involvement of the soul; unsanctioned as an ordinance of God and constituting a mere formality prerequisite to legal cohabitation.

If the law is to be changed in this regard, such change is the responsibility of the legislature which we shall not assume to usurp.