47 So.2d 774 (1950)
CORREN
v.
CORREN.
Supreme Court of Florida, en Banc.
August 1, 1950.
Rehearing Denied September 12, 1950.
Rush & Pierce and George A. Pierce, Jacksonville, for appellant.
Marks, Gray, Yates & Conroy, Jacksonville, for appellee.
THOMAS, Justice.
In this case the appellant sued her husband for damages alleged to have resulted from the negligent operation of an automobile by the daughter of both parties to whom the husband had entrusted the car.
The circuit judge held the view that one spouse could not sue the other because, under the common law, they were one person and this fiction had not been changed either by Section 708.08 or 708.09, Florida Statutes, 1941, and F.S.A. So he sustained the demurrer to the declaration and entered a judgment for the defendant.
This situation is the foundation for the sole question here, whether the wife may recover from her husband for negligent injury to her person.
Counsel for appellant has faithfully traced the history of the development of married women's rights since the enactment in 1829 of what now appears as Section 2.01, Florida Statutes, 1941, and F.S.A., declaring the common and statute laws of England, in effect July 4, 1776, to be in force in this state where consistent with the Constitution and laws of the United States and the acts of the legislature of this state, through the laws, constitutional provisions, and judicial decisions of this state until the passage of the laws of 1943, to which we shall eventually refer, in his effort to convince us that there has been a definite trend in the emancipation of the wife to the point where now she may sue her husband for injuries inflicted upon her by the driver of his car.
We see no occasion to digest the provisions of Section 1 of Article XI of the Constitution, F.S.A., or any of the statutes on the subject now collected in Chapter 708, Florida Statutes, 1941, and F.S.A., except two of these, 708.08 and 708.09, the sections which the circuit judge thought had not changed the common law status of the man and the wife, for in 1932 when the court decided the case of Webster v. Snyder, 103 Fla. 1131, 138 So. 755, these statutes, and of course the constitutional provisions, were in effect, and it was held that the action of a young woman against a person who was alleged to have injured her while serving as the agent of another should be abated upon her marriage to the one causing the injury. We interpret this decision as holding in effect that at that time the common law adopted by Section 2.01, supra, had not been so altered that a woman could sue her husband, or rather, continue a suit against a person who, subsequent to the alleged injury and the institution of the suit, had become her husband.
The appellant regards Chapter 21932, supra, as having destroyed the "unity of the marriage association" as it theretofore existed and reasons that if the wife may enter into agreements, as is provided in Section 2 of the act, and may "sue and be sued," as is provided in Section 1, it follows that she, being empowered to sue her husband in case of a breach of their agreement, *775 may also sue him for a tort committed upon her. But we cannot follow the appellant to this conclusion. "Under the common law", we said in Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, 880, "the woman and the man became one person upon marriage, and that person was the husband. * * * This unity, or more accurately, merger, has been called the foundation for the rights, duties, and disabilities of marriage."
We have not found in our examination of the legislative enactment any plain provision extending a married woman's rights to include a suit against her husband for tort. It seems to us that the trend toward giving a married woman more freedom has largely been with regard to her separate property and her dealings with persons other than her husband.
Counsel has leaned rather heavily on the decision in State v. Herndon, 158 Fla. 115, 27 So.2d 833, where this court held that a husband could be charged with larceny of the separate property of his wife, but we think that opinion cannot be said to have declared unequivocally that for all purposes the common law fiction had been abrogated in this state by the passage of the above act or that there was any necessity so to hold, for, after all, that was a controversy between the state and the husband to punish him for the theft of property belonging to her, and all seem agreed that the identity of her individual holdings has long been established. Even so, as we said in Rogers v. Newby, Fla., 41 So.2d 451, 452, "Mr. Justice Terrell, writing for the court, * * * was at pains to add" that this was true "`insofar as it relates to her separate personal property.'"
There is little we can add to what has already been said by this court in Taylor v. Dorsey and Rogers v. Newby, supra, except to emphasize our remark in the latter case that the so-called emancipation act did not so affect the marriage relationship that the husband and wife were thenceforward permitted to go their separate ways, but instead were still mates residing in a common home, each making in his own way a contribution to the marriage venture.
As we have already commented, this fundamental relationship does not seem directly affected by the provisions of organic and statutory law with reference to the woman's dominion over her own property, and we feel that we would have to resort to the illogic to hold that there can be found in any of them the implication even that she might sue her spouse for injuries resulting from the negligent operation of his automobile.
We have frequently referred to the common enterprise and the accumulation of material things in which she has a direct interest, although her efforts placed no actual cash in the family exchequer but were made in the rearing of children, the maintenance of a home. It seems to us that we should not extend ourselves through judicial process to hold that she could force him to take from the family fortune an amount to compensate her for her injuries when, after all, the responsibility is upon the husband to see that she receives proper care and to discharge any obligations that such care may entail. These are not suggested especially as reasons for our construction of existing law against the position she takes, but rather they occur to us as reasons why the legislature has not expressly or, we think, impliedly authorized her to bring such an action.
The appellant insists that Section 708.08, supra, "abrogates the common law doctrine completely" because the act provides that she may "sue and be sued," but we think this provision must be read in context; and if the whole of Section 1 is considered, the very definite impression is given that it was designed primarily to extend her control over her separate property and enlarge her power to deal with others independently. Of course in operating in this field, she should be given the power to enforce her rights, and should be made responsible for her acts as we decided in Taylor v. Dorsey, supra.
The second section of the act expressly authorized her to enter into agreements with her husband, to become his partner, and to make him her attorney in fact; and although she might presumably sue *776 him for some breach of a contract in which they entered or for some damage resulting from a breach on his part of the partnership arrangement, still these provisions do not give any reason to add that she may also sue him for such a tort as is pleaded in this case.
In the next section of the act the legislature was careful to provide that nothing in the act should affect the husband's duty to support and maintain his wife and children or should abolish dower or estates by the entireties or affect the distribution of the estate of either upon the death of the other, provisions emphasizing the marriage relationship.
Our opinion coincides with that of the Supreme Court of the United States expressed in Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 112, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921, that any change in the law so far-reaching and radical as to obliterate the common law unity "should only be wrought [by the legislature] by language so clear and plain as to be unmistakable evidence of the legislative intention." In that decision the court commented upon the effect upon public welfare and domestic harmony if each spouse were given the right to sue the other as if they were not married and then further observed: "Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness."
When one ponders the effect upon the marriage relationship were each spouse free to sue the other for every real or fancied wrong springing even from pique or inconsequential domestic squabbles, one can imagine what the havoc would be to the tranquility of the home. Certainly the success of the sacred institution of marriage must depend in large degree upon harmony between the spouses, and the relationship could easily be disrupted and the lives of offspring blighted if bickerings blossomed into law suits and conjugal disputes into vexatious, if not expensive, litigation.
The legislature will assume grave responsibility when it enacts that each spouse may treat the other as a stranger so far as legal rights are concerned; and when it does so, the language proclaiming this revolutionary change should be positive and unambiguous.
We are impelled to the conclusion that the circuit judge was eminently correct when he held that the appellant could not and should not prevail in this case.
Affirmed.
ADAMS, C.J., and TERRELL, CHAPMAN, SEBRING, and HOBSON, JJ., concur.
ROBERTS, J., dissents.