ROBERTS, Justice
(dissenting).
The sole issue on this appeal is whether the common-law rule that a cause of action for tort abates upon the marriage of the female who was injured to the person alleged to have caused the injury, should be judicially declared to be of no force and effect in this state. The trial judge declined to so construe the provisions of the state and federal constitutions and statutory law of this state relied upon by plaintiff in support of this contention and dismissed her complaint for damages for injuries allegedly sustained by reason of the negligent act of defendant committed some two and one-half months prior to their marriage, the suit being filed after the marriage.
This court has not heretofore been called upon to decide the exact question presented here. In Webster v. Snyder, 1932, 103 Fla. 1131, 138 So. 755, it was held that the common-law rule referred to above did not operate to abate a suit against the employer of the tortfeasor for injuries sustained by the plaintiff prior to her marriage to the-tortfeasor allegedly due to a negligent act committed by him in the course of his employment. This court said:
“ * * * such marriage does not affect the cause of action which the plaintiff has against both the defendant and her son acting as defendant’s servant, for damages because of the negligent injury. The marriage of the-plaintiff to the defendant’s son and servant abates the plaintiff’s right of action against the servant whom she married, though the marriage does not *15 ■create a relation between the plaintiff and the defendant that suspends or •abates the plaintiff’s right of action against the defendant; nor does the ■marriage affect the servamt’s liability ■to his principal, who is the defendant below.” (Emphasis added.)
It will have been noted that the husband-tortfeasor was not named as a party defendant in the Webster case, since at the time that suit was filed the common-law fiction of the unity or identity of the husband and wife still obtained in this state. This fiction, plus the inability of a person to sue himself, precluded suits at common ■law by a wife against her husband on a ■cause of action arising out of a tort committed against her prior to the marriage. See Brown v. Gosser, Ky.1953, 262 SW.2d 480, 43 A.L.R.2d 626. It should also be ■noted that the decision in the Webster case permitted the wife to do indirectly that which she could not do directly — that' is, bold the husband accountable for his tort committed against her prior to the marriage — since the court expressly pointed -out that the marriage did not affect the husband’s liability over to the defendant, his ■employer.
The Florida Married Women’s Emancipation Act of 1943, §§ 708.08 and 708.09, Fla.Stat., F.S.A., enacted subsequent to the ■decision of this court in the Webster case, supra, has “abrogated every trace of the ■common-law fiction, the unity of husband and wife, insofar as it relates to her separate personal property. * * * The only .•semblance of the common-law fiction that still abides is the requirement that the husband join in conveyances of the wife’s separate realty.” State v. Herndon, 1946, 158 Fla. 115, 27 So.2d 833, 834. A married woman is now empowered “to take charge ■of, and manage and control her separate property * * * to sue and be sued * * without restraint * * * in all respects •as fully as if she were unmarried.” She has and may exercise “all rights and powers with respect to her separate property * * * to the same extent and in like manner as if she were unmarried.”
Despite the mandate of § 2.01, Fla.Stat., F.S.A., adopting the English common law as the law of this state except where “inconsistent” with the constitution and laws of this state, this court has not hesitated to apply the “rule of reason” expressed by the maxim cessante ratione ces-sat et ipsa lex in over-ruling a common-law rule previously followed by this court, see Abraham v. Baldwin, 1906, 52 Fla. 151, 42 So. 591, 10 L.R.A.,N.S., 1051, or in holding originally that a common-law rule was not applicable in this state “because contrary to our customs, institutions, or intend-ments of our statutes on other subjects.” Waller v. First Savings & Trust Co., 1931, 103 Fla. 1025, 138 So. 780, 784. See also State v. Herndon, supra, 27 So.2d 833. The maxim that “When the reason for any rule of law ceases, the rule should be discarded” is also a part of the common law of this state. Ripley v. Ewell, Fla.1952, 61 So.2d 420, 421, involving the right of á wife to sue a third party tortfeasor for the loss of consortium of her husband — a right denied at common law. And, as there stated,
“If, therefore, the inability of the wife to recover in a case of this kind is due to some reason of the common law which has disappeared, the rule denying her the right to maintain the action may have disappeared with it.”
There can be no doubt that the principal reason for the inability of the wife to sue her husband after marriage, or to prosecute to completion a suit begun before marriage, on a cause of action accruing prior thereto — the common-law fiction of the identity of husband and wife — no longer exists in this state. There remains, then, only the question of whether a suit based on an antenuptial tort should be prohibited as against public policy for the same reasons that a suit based on a tort committed against the wife during cover-ture is held to be prohibited. See Corren *16 v. Corren, Fla.1950, 47 So.2d 774, 776. It was there said that,
“Certainly the success of the sacred institution of marriage must depend in large degree upon harmony between the spouses, and the relationship could easily be disrupted and the lives of offspring blighted if bickerings blossomed into law suits and conjugal disputes into vexatious, if not expensive, litigation.”
It is noteworthy that, as to torts committed against the wife during coverture, some courts take the view that the doctrine of nonliability “is founded not on the inability of the one spouse to sue the other, but on the principle that husband and wife are one person in law,” so that the wife at common law had no cause of action on which to sue. Spector v. Weisman, 59 App.D.C. 280, 40 F.2d 792, quoted by Mr. Justice Buford in his dissenting opinion in the Webster case, supra, 138 So. at page 756. See also McCurdy, Torts Between Persons in Domestic Relations, 43 Harv. L.Rev. 1030, 1044.
As to antenuptial torts, there can' be no doubt that the female has a cause of action against the tortfeasor; it is merely her right of action that is abated by her marriage to the tortfeasor, under the common-law rule. Webster v. Snyder, supra, 138 So. 755. And we are not persuaded that the rule of Corren v. Corren, supra, as to torts committed during coverture, should be extended for reasons of public policy to antenuptial torts. The danger foreseen in the Corren case — of bickerings blossoming into law suits and conjugal disputes into vexatious litigation — has little if any application to an antenuptial tort. Indeed, as has been noted by other courts and textwriters, any realistic view of this matter must take into account the existence of liability insurance in automobile cases and similarly commonly insured risks. McCurdy, in his work, supra, 43 Harv.L.Rev. at p. 1052, points out that these cases “form the bulk of recent cases, and presumably both spouses are in complete and complacent harmony.” See also the discussion on this point in Koplik v. C. P. Trucking Corporation, 1957, 47 N.J.Super. 196, 135 A.2d 555 (reversed in 27 N.J. 1, 141 A.2d 34, because of the express wording of the statute). The danger of domestic collusion and fraudulent claims, also mentioned by some courts in support of the “public policy argument,” would appear to present no greater problem than the danger of such claims in other types of cases. As stated in Hamilton v. Fulkerson, Mo. 1955, 285 S.W.2d 642, 647, in which the Missouri Supreme Court declined to extend to antenuptial torts the common-law rule followed in that state as to torts committed during coverture,
“The danger of fraudulent and trivial claims is no more real than that danger in litigation between other parties, and the courts and juries are as able to deal with trivial, fraudulent, and fictitious claims between spouses as well as with such claims between other litigants.”
Standing four-square against the “public policy” argument — which appears to us to be nebulous and certainly inconclusive as to antenuptial torts — is § 4 of the Declaration of Rights of the Florida Constitution, F.S.A., providing that “All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law * * * ”; the “due process” clause of § 12 of the Declaration of Rights of the Florida Constitution; and the “due process” and “equal protection” clauses of the Fourteenth Amendment to the Federal Constitution. It is recognized that the right to damages for an injury is included within the constitutional guaranty of due process. 12 Am.Jur., Constitutional Law, § 622, p. 314. And now that married women have been relieved of their common-law disabilities and the common-law fiction of the identity of husband and wife, no longer obtains in this state, State v. Herndon, su *17 pra, 27 So.2d 833, the conclusion seems inevitable that to perpetuate the common-law rule here in question with respect to ante-nuptial torts would he contrary to the in-tendments, effect, purpose, and object of section 4 of our Declaration of Rights. Cf. Waller v. First Savings & Trust Co., supra, 138 So. 780, 785. As stated in the Waller case, in which this court declined to adopt the common-law rule as to the abatement of a cause of action for tort upon the death of the tortfeasor:
“To merely state the rule’s permissible application, in the light of our recognized theory of a constitutional right to a remedy in the court for any injury done, seems to be sufficient to demonstrate that such rule has no place in our system of administering justice, even if it was a part of the English common law.”
In summary, we hold that, with the dissipation in 1943 of the common-law fiction of the identity of husband and wife, the principal reason for the abatement of the wife’s right of action against her husband on a cause of action for tort accruing prior to their marriage, no longer exists; that to perpetuate the English common-law rule in this respect would be inconsistent with the constitution and the laws of this state as they presently exist; and that no reasons of public policy require a different conclusion as to antenuptial torts. Cf. Webster v. Snyder, supra, 138 So. 755, which stands for the proposition that the wife may hold the husband accountable to her, indirectly, for his antenuptial tort, even though the common-law fiction of unity of husband and wife, then existing, prevented her suing him directly for his tort.
Nothing said herein shall be construed as a recession from or modification of the decision of this court in Corren v. Corren, supra, 47 So.2d 774, decided subsequent to the Married Women’s Act of 1943, in which this court declined to construe that Act as authorizing a suit by the wife against the husband upon a tort allegedly committed during coverture. In this type of tortious conduct the “public policy” considerations are entirely different; moreover, since at common law such conduct gave rise neither to a cause of action nor a right of action by the wife against the husband, any change of the common law in this respect would seem to require a statute specifically conferring upon her not only the right to sue but also a cause of action upon which to sue.
For the reasons stated it is my opinion that the judgment appealed from should be reversed and the cause remanded for further proceedings.
Therefore, I respectfully dissent.