224 So.2d 326 (1969)
Angela Dorothy GASTON, Appellant,
v.
John PITTMAN, Appellee.
No. 38217.
Supreme Court of Florida.
May 28, 1969.
Rehearing Denied June 23, 1969.
W.H.F. Wiltshire, of Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, for appellant.
W. Spencer Mitchem of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellee.
ADKINS, Justice.
This case is presented on Certificate as authorized by Fla. Stat., § 25.031, F.S.A., and Rule 4.61, Fla.App. Rules 32, F.S.A., from the United States Court of Appeals for the Fifth Circuit, 405 F.2d 869, in an appeal from a decision of the trial court granting defendant's motion for a summary final judgment in an action by a divorced woman against her former husband for a tort committed by him prior to their marriage.
The Court states that:
"Appellant brought this action seeking to recover damages for the death of her minor child, born during a prior marriage, allegedly caused by the negligence of the defendant-appellee. Thereafter, plaintiff and the defendant were married. They were divorced on January 18, 1966, and plaintiff subsequently initiated this suit. The United States District Court held that the wife's action had been extinguished upon her marriage to the defendant by virtue of the common law theory of the unity of husband and wife, as recognized and applied by Florida courts, Bencomo v. Bencomo, Fla. 1967, 200 So.2d 171. Accordingly, the Court entered a summary final judgment in favor of the defendant and dismissed the complaint.
"Plaintiff, citing Amendola v. Amendola, Fla.App. 1960, 121 So.2d 805 as authority for her position, argues that her `cause of action,' the substantive right, was vested and therefore unaffected by her marriage to the defendant, and further, that her `right of action,' the procedural right, though barred during coveture, was only `abated or suspended,' and therefore revived by the divorce. The district judge concluded, however, that statements in Florida decisions, notably Webster v. Snyder, 1932, 103 Fla. 1131, 138 So. 755 and Amendola v. Amendola, supra, to the effect that the wife's `right of action' was `abated or suspended' during the marriage meant that the wife's action was extinguished or terminated by the marriage. Accordingly, even if the `cause of action' were vested, the wife's suit would be permanently barred. Although both parties insist that Florida law is clear in their favor, there are no Florida decisions directly dispositive of this controversy.
"(3) Question of Law to be Answered.
"Whether under Florida law a divorced woman can maintain an action against *327 her former husband for a tort committed by him prior to their marriage."
This Court considered Amendola v. Amendola (Fla. 1960), 118 So.2d 13, on appeal from the Circuit Court. The Court determined that the appeal was improvidently taken and transferred the cause to the appropriate District Court of Appeal. Justice Roberts dissented on the jurisdictional question and filed an opinion discussing the merits of the case. In his opinion Justice Roberts states:
"The sole issue on this appeal is whether the common-law rule that a cause of action for tort abates upon the marriage of the female who was injured to the person alleged to have caused the injury, should be judicially declared to be of no force and effect in this state. * * *
"* * * In Webster v. Snyder, 1932, 103 Fla. 1131, 138 So. 755, it was held that the common-law rule referred to above did not operate to abate a suit against the employer of the tortfeasor for injuries sustained by the plaintiff prior to her marriage to the tortfeasor allegedly due to a negligent act committed by him in the course of his employment. This court said:
"`* * * such marriage does not affect the cause of action which the plaintiff has against both the defendant and her son acting as defendant's servant, for damages because of the negligenct [sic] injury. The marriage of the plaintiff to the defendant's son and servant abates the plaintiff's right of action against the servant whom she married, though the marriage does not create a relation between the plaintiff and the defendant that suspends or abates the plaintiff's right of action against the defendant; nor does the marriage affect the servant's liability to his principal, who is the defendant below.' (Emphasis added.)
"It will have been noted that the husband-tortfeasor was not named as a party defendant in the Webster case, since at the time that suit was filed the common-law fiction of the unity or identity of the husband and wife still obtained in this state. This fiction, plus the inability of a person to sue himself, precluded suits at common law by a wife against her husband on a cause of action arising out of a tort committed against her prior to the marriage. See Brown v. Gosser, Ky. 1953, 262 S.W.2d 480, 43 A.L.R.2d 626. It should also be noted that the decision in the Webster case permitted the wife to do indirectly that which she could not do directly  that is, hold the husband accountable for his tort committed against her prior to the marriage  since the court expressly pointed out that the marriage did not affect the husband's liability over to the defendant, his employer.
"The Florida Married Women's Emancipation Act of 1943, §§ 708.08 and 708.09, Fla. Stat., F.S.A., enacted subsequent to the decision of this court in the Webster case, supra, has `abrogated every trace of the common-law fiction, the unity of husband and wife, insofar as it relates to her separate personal property. * * * The only semblance of the common-law fiction that still abides is the requirement that the husband join in conveyances of the wife's separate realty.' State v. Herndon, 1946, 158 Fla. 115, 27 So.2d 833, 834. A married woman is now empowered `to take charge of, and manage and control her separate property * * * to sue and be sued * * * without restraint * * * in all respects as fully as if she were unmarried.' She has and may exercise `all rights and powers with respect to her separate property * * * to the same extent and in like manner as if she were unmarried.'
"Despite the mandate of § 2.01, Fla. Stat., F.S.A., adopting the English common law as the law of this state except where `inconsistent' with the constitution and laws of this state, this court has not hesitated to apply the `rule of reason' expressed by the maxim cessante ratione cessat et ipsa lex in over-ruling a common-law rule previously followed by this court, see Abraham v. Baldwin, 1906, 52 Fla. 151, 42 So. 591, 10 L.R.A., N.S., 1051, *328 or in holding originally that a common-law rule was not applicable in this state `because contrary to our customs, institutions, or intendments of our statutes on other subjects.' Waller v. First Savings & Trust Co., 1931, 103 Fla. 1025, 138 So. 780, 784. See also State v. Herndon, supra, 27 So.2d 833. The maxim that `When the reason for any rule of law ceases, the rule should be discarded' is also a part of the common law of this state. Ripley v. Ewell, Fla. 1952, 61 So.2d 420, 421, involving the right of a wife to sue a third party tortfeasor for the loss of consortium of her husband  a right denied at common law. And, as there stated,
"`If, therefore, the inability of the wife to recover in a case of this kind is due to some reason of the common law which has disappeared, the rule denying her the right to maintain the action may have disappeared with it.'"
We adopt this reasoning of Justice Roberts.
In prohibiting actions by a wife against her husband, the reasons usually assigned by the courts to support the public policy argument are that such actions between spouses would disturb domestic tranquility; tend to cause marital discord and divorce; cause fictitious, collusive, and fraudulent claims; cause a rise in liability insurance rates; and promote trivial actions. It has also been said that a spouse has an adequate remedy for civil wrongs inflicted by the other spouse through the criminal and divorce courts. See the Law of Torts by Harper and James, Vol. 1, § 8.10; Laws of Torts by William L. Prosser (3rd Ed.), § 116; Pollock on Torts (15th Ed.), pp. 49-50; Annot. 43 A.L.R.2d 632; 41 C.J.S. Husband and Wife § 398; 43 Harv.Law Rev., Torts Between Persons in Domestic Relation by William E. McCurdy, p. 1030. All of these reasons fail in an action for an antenuptial tort by a divorced wife.
As the tort in the principal case was committed before coverture there could be no defense of legal identity. This cause of action against the tortfeasor remained as her separate property after marriage, but the right of action was abated by her marriage to the tortfeasor. See Webster v. Snyder, 103 Fla. 1131, 138 So. 755 (1932), where the court distinguished "cause of action" and "right of action." See also, 1 F.L.P., Abatement, Revival and Survival, § 2.
There are no considerations of public policy weighty enough to prohibit a divorced wife's suit against her former husband for an antenuptial tort. As reasoned by Justice Roberts in his opinion filed in Amendola, supra:
"Standing four-square against the `public policy' argument  which appears to us to be nebulous and certainly inconclusive as to antenuptial torts  is § 4 of the Declaration of Rights of the Florida Constitution, F.S.A., providing that `All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law * * *'; the `due process' clause of § 12 of the Declaration of Rights of the Florida Constitution; and the `due process' and `equal protection' clauses of the Fourteenth Amendment to the Federal Constitution. It is recognized that the right to damages for an injury is included within the constitutional guaranty of due process. 12 Am.Jur., Constitutional Law, § 622, p. 134. And now that married women have been relieved of their common-law disabilities and the common-law fiction of the identity of husband and wife, no longer obtains in this state, State v. Herndon, supra, 27 So.2d 833, the conclusion seems inevitable that to perpetuate the common-law rule here in question with respect to antenuptial torts would be contrary to the intendments, effect, purpose, and object of section 4 of our Declaration of Rights. Cf. Waller v. First Savings & Trust Co., supra, 103 Fla. 1025, 138 So. 780, 785.
We adopt this reasoning of Justice Roberts.
In summary, we hold that the injured woman having become vested with a cause of action against the tortfeasor, the *329 subsequent marriage to the tortfeasor did not extinguish the "cause of action," but merely abated the woman's capacity to sue. This "right of action" was abated only during the existence of the marriage. Upon divorce the procedural bar was lifted. In other words, under Florida law a divorced woman can maintain an action against her former husband for a tort committed by him prior to their marriage.
This question should be answered in the affirmative.
ERVIN, C.J., ROBERTS and BOYD, JJ., concur.
DREW, J., dissents.